*Perkins, Higgins & McCabe, James A. Higgins,* for defendant.

INDUSTRIAL TRUST COMPANY *et al. vs.* VERA G. SAUNDERS *et al.*

MAY 10, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This cause was begun by a bill in equity filed by the two administrators, with the will annexed, of the estate of Frank E. Westcott, late of the town of Burrillville, Rhode Island, deceased.  The respondent Vera G. Saunders is a distant relative of the deceased, and the other respondent Ruth Ross Binns, formerly Ruth Ross, is the sole beneficiary under the will and the daughter of complainant Jesse H. Ross. A member of the bar of this state was appointed by the superior court to represent the contingent interests of persons not in being or not ascertainable.  The prayer of the bill is that the will be construed and that the administrators be instructed as to what personal property is thereby bequeathed to the respondent Ruth Ross Binns.

The respondents, who are of full age, filed answers admitting all the allegations of the bill and joining in its prayer. The representative of contingent interests filed an answer neither admitting nor denying the allegations of the bill. The cause was then heard before a justice of the superior court and evidence was presented.  When it was ready for hearing for final decree, it was certified to this court for final determination, in accordance with general laws 1938, chapter 545, §7.

There is no conflict in the evidence. The testator, a man of limited education who worked as a carpenter during the later years of his life, was about seventy-five years old when he died on November 21, 1941. He wrote his will about one month before his death. We quote the will in its entirety.

"St Joseph Hospital
Hills Grove
R. I.
Oct 18 — 41

To whome it may Consern
I F. E. Westcott, of Pascoag R. I. I give & Bequeath all my Money & Real Estate to Ruth Ross of Pascoag R. I.

Jess Hyron Ross Girl
F. E. Westcott.
Alfred J. Whitehead.
Frank E. Buckham.
Edmond Lemieuix"

This will was admitted to probate by the probate court of the town of Burrillville on April 6, 1942. On that day the complainants were appointed coadministrators *c. t. a.* and on April 15, 1942 they qualified by filing the required bond. Thereafter, the respondent Saunders appealed to the superior court from the decree of the probate court admitting the will to probate. While the appeal was pending, one Emily B. Ross, hereinafter further identified, was allowed to intervene in those proceedings as a party aggrieved. On January 20, 1943, upon *consent of all the parties,* a decree was entered in the superior court dismissing the appeal and affirming the decree of the probate court admitting the will to probate.

The testator's estate comprises both real and personal property, some of which he had received from his father. The real estate consists of a three-room house and some fifty acres of woodland. The personal estate consists of cash, shares of stock, dividend checks, promissory notes and household furniture, the last mentioned item being appraised at $50. In addition to these items there is a bank account

which stood at the time of testator's death in the names of "Frank E. Westcott or Daniel A. Smith" but to which Daniel A. Smith has since released all claims.

It further appears in evidence that the testator never married and that he had no near relatives. With the exception of an undetermined period during which Emily B. Ross, above mentioned, acted as his housekeeper, he lived alone in the three-room house hereinbefore mentioned. He had very few visitors. Complainant Ross, who had known him for nearly fifty years, and Ross's daughter, Ruth Ross, now Ruth Ross Binns, who was about twenty-six years old and single when he died, were the only ones who apparently called on him regularly over the years. During the time that he was confined to the hospital, Ross went there about once every two weeks and attended to various matters for him, including the payment of hospital bills.

The evidence is uncontradicted that the testator never discussed his financial affairs or his property, or the provisions of any will, with either Ross or his daughter Ruth. The will in the instant cause was given to Ross after his death by one of the sisters at St. Joseph's Hospital, where it was found among his belongings.

The only time when the testator mentioned a will to Ross was when, just before he executed a prior instrument purporting to be a will, he asked Ross to serve as executor thereunder, to which Ross agreed. This instrument is merely an exhibit in the instant cause. It is dated March 24, 1941. Excepting a small bequest to one Clinton Bailey, the deceased thereby left his entire estate to Emily B. Ross.

The evidence also shows that her attorney in that case, who in this cause is the representative of contingent interests, had then full knowledge of the earlier instrument. But there is nothing in the instant cause to show that either of them claimed that she was entitled to any of the testator's property by reason of that instrument. On the contrary, the earlier instrument was never offered for probate and, when she was allowed to intervene as an interested party in the

probate appeal hereinbefore mentioned, she did not insist that both instruments be probated but joined with the other interested parties in the entry of a consent decree affirming the later instrument, which is the one now before us, as the last will and testament of Frank E. Westcott.

The fundamental rules that control in the construction of wills are well established by numerous and consistently recurring decisions of this court. The citation of cases on the following points is unnecessary. The primary rule is that the intention of the testator, if definitely ascertainable and lawful, must govern and that such intention must be ascertained, if possible, from a consideration of the whole will alone. It is also well established with us that, in a proper case, evidence of the circumstances surrounding the testator and existing at the time of the execution of a will may be considered in connection with the will as an aid in ascertaining his intention as therein expressed.

The decision in the instant cause depends entirely on the construction to be given to the words "my Money" as they appear in the will. The complainants express no opinion, while the respondent Ruth Ross Binns sharply disagrees with the respondent Vera G. Saunders and the representative of contingent interests as to the meaning of those words. Ruth Ross Binns contends that the words "my Money", as used by the testator in this will, mean all his personal estate of every kind or description.

Vera G. Saunders contends that those words mean only cash and possibly dividend checks. The representative of contingent interests, who joins in this contention of respondent Saunders, further concedes that the words in question might also cover promissory notes. Both of the two last-named parties strongly contend, however, that those words do not include shares of stock or household furniture. This construction makes the items thus excluded intestate property.

In view of such result under their contentions and in order to avoid the operation of our well-settled rule that in

the proper circumstances there is a strong presumption against partial intestacy, respondent Saunders and the representative of contingent interests make the following additional contentions, which we will consider before addressing ourselves to their main contentions just above stated. The representative of contingent interests argues that the rule against intestacy was weakened by our decision in *Carr* v. *Railton*, 66 R. I. 225, and both argue that no intestacy can result in the circumstances of this cause, because whatever personal property was not bequeathed by the terms of the present will would pass in accordance with the terms of the purported will of March 24, 1941.

The contention by the representative of contingent interests, as to the effect of the *Carr* case on the rule against intestacy, is clearly without merit. A careful reading of that case will show that such rule was there recognized and in no sense weakened; and that counsel's argument in this connection is based upon a misconception of the real ground for that decision.

The second contention is equally without merit. The argument on this point, which is not supported by any citation of authority, not only militates against the interests of the above-mentioned parties in this cause, but also directly affects a matter that has been judicially determined with the express consent of all parties in interest. The instrument to which they refer, as hereinbefore stated, has never been offered for probate as a will or part of the will of the testator, although its existence was known to all parties in interest when the instrument now before us was offered for probate and finally established, by a consent decree, as *the will* of the deceased. The instant cause is not concerned with the probate of two instruments which, either alone or in combination with each other, constitute the will of the testator. We are here asked to construe the only instrument that was ever probated as Westcott's will.

In this situation the instrument purporting to be a prior

will is but one of the surrounding circumstances that may be taken into consideration in determining the intention of the testator. In other words, that instrument is pertinent in this cause only if it sheds light on the meaning that the testator intended to give to the words "my money" or "money" in the will before us for construction. With this object in view, we have carefully examined the purported prior will and find nothing therein tending to show the meaning that Westcott attributed to those words.

We will now consider the main contentions, hereinbefore stated, of respondent Saunders and of the representative of contingent interests. The word "money" has no fixed or technical meaning when used in a will. It is a term of flexible scope, having either a restricted or wide meaning, according to the signification that the testator intended to give that word in his will. It may be used to mean cash only, or personal property, or even wealth, that is, property of any kind that may be converted into cash. What meaning it shall have in various and different testamentary documents depends upon the testator's intention as gathered from a complete survey of the language of each particular will, clarified, if necessary and possible in a proper case, by recourse to a fair consideration of the circumstances surrounding the testator and existing at the time when the will was executed. With reference to personal estate, which is the kind of property involved in this cause, the word "money" will include any such property as may fall within the meaning that the testator attributed to that word in his will. In one instance it may have been intended to restrict its meaning to mere cash, while in another instance it may have been intended to mean the testator's entire personal estate. See note 93 A. L. R. 514.

The respondent Saunders and the representative of contingent interests argue that in this cause there is nothing in the will itself to enlarge the meaning of the term "money" or to show that it was used in other than its primary sense of cash. We cannot follow this argument, nor do we consider

the case of *In re Gates,* 2 Ch. Div. L. R. (1929) 420, upon which respondent Saunders strongly relies, to be applicable in the instant cause. This is so because of a clear difference in the language of the will construed in that case and the will now before us and of the surrounding circumstances.

In the *Gates* case the entire will was "I leave all my money to Alfred George Cabell." The deceased was, in the words of the court, a "mercantile man" and not "an illiterate testator." In answer to the contention that the word "money" should be given a wide interpretation, the court recognized that such word could be used in various senses but stated that it was not free to interpret that word as it pleased, because a number of decisions defined the limits to the interpretation of the word. After a discussion of certain cases, the court, at page 428, expressed itself as follows: "The rule is that the word 'money' used in a will means money in the strict sense, unless the *context* shows that a different interpretation is warranted. . . . There is here *no context* to allow the interpretation of the words 'all my money' in any other way than in the strict sense." (italics ours)

What force the *Gates* case might have with us in the same or similar situation, especially if there were evidence of pertinent surrounding circumstances, we are not called upon to decide now. Our purpose in summarily discussing that case is to point out that in the instant cause respondent Saunders is not warranted in isolating the word "money" from its context, for even the opinion in the *Gates* case, upon which she mainly relies, at page 426, says that a "comparatively slight context" may enlarge the strict meaning of the word "money".

Making due allowance for the age and physical condition of the testator, it is evident that the will now before us was not drawn by a lawyer, or by a person who was used to writing, or by one who was accustomed to employ words with careful consideration as to their strict meaning. It is obvious that the testator, though not illiterate, was a person of limited education, who wrote as he was in the habit of speaking,

loosely, perhaps, but with a definiteness to convey his meaning and intent.

The pertinent language of the will is "all my Money & Real Estate." No intervening words or punctuation separate these two phrases. As written, they are bound together and therefore must be so considered together in determining the testator's intention. Respondent Saunders and the representative of contingent interests delete the phrase "& Real Estate" from consideration by conceding that no question as to testator's real estate is involved in this cause. After making this concession, they proceed to urge their respective contentions as if the will merely said "all my Money", thus striving to avoid the force of the context that immediately follows. This is plainly unwarranted and gives them no advantage. Nor is the word "all" without significance. Although this word does not enlarge the meaning of the word "money", yet, once the meaning which the testator attributed to the latter word is determined, the former word will embrace all items thus described in the possession of the testator at the time of his death.

When the two above-mentioned phrases are considered together and in relation to each other, it is clear to us that the testator had in mind the two classes of property commonly known to the ordinary man, personal property and real estate, and that he used the word "money" to mean "personal property". This view is clearly confirmed by the surrounding circumstances. On this point it is not necessary to recall here with any particularity the uncontradicted evidence, fully stated earlier in this opinion. Complainant Ross was testator's closest friend for nearly fifty years and apparently the only person who showed any concern for him during his last illness. Ruth Ross, now Ruth Ross Binns, had known him since childhood and had visited him at his home constantly over the years until he was removed to the hospital. In the circumstances he had ample reason to intend that Ruth Ross or "Jess Hyron Ross Girl" should be the sole object of his bounty. It is, therefore, our opinion that the

testator intended by the words "I give & Bequeath *all my Money* & Real Estate" (italics ours) to dispose of his entire estate, both real and personal; and that he intended by the words "all my Money", as used in that context, to describe. all his property that was *not* real estate.

On May 23, 1945, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Frank F. Davis, Emile H. Ruch,* for complainants.

*Sayles Gorham,* for Vera G. Saunders.

*Frederick W. O'Connell, Ernest A. Jenckes, Swan, Keeney & Smith,* for Ruth Ross Binns.

*Fred B. Perkins,* guardian *ad litem pro se ipso.*