[Civ. No. 19132. Second Dist., Div. One. Dec. 19, 1952.]

Estate of V. A. KEMMERRER, Deceased. BERTRAND RHINE, Respondent, v. JAYNE C. KEMMERRER, Appellant.

Allan L. Leonard for Appellant.

Bart F. Wade for Respondent.

WHITE, P. J.—This is an appeal from that portion of an order of the Superior Court of Los Angeles County, sitting in probate, by which the court denied a petition that the entire estate of decedent be set aside to the appellant widow pursuant to the provisions of sections 640 to 646, inclusive, of the Probate Code. By these sections it is provided, in substance, that if the estate of the decedent at the date of his death does not exceed $2,500 in value and the decedent leaves a surviving spouse or minor children who do not have other property or assets exceeding $5,000 in value, then upon appropriate allegations in a petition for letters of administration or probate of will, or by a separate petition, the entire estate may be set aside to such widow or minor children.

Section 645 of the Probate Code specifically provides in part as follows: ''If, upon the hearing of any petition provided for by this article, the court finds that the net value of the estate over and above all liens and encumbrances of record at the date of the death of the decedent does not exceed the sum of two thousand five hundred dollars ($2,500) . . . , *and that the expenses of the last illness, funeral charges and expenses of administration have been paid,* it shall by decree for that purpose, assign to the surviving spouse of the decedent, if there be a surviving spouse, or, if there be no surviving spouse, then to the minor child or children of the decedent . . . , if any, the whole of the estate, subject to whatever mortgages, liens, or encumbrances there may be

upon said estate at the time of the death of .the decedent.''
(Emphasis added.)

V. A. Kemmerrer died testate, survived by his widow
(appellant herein), two daughters, a son, and his mother.
By his will he left all his estate to his friend, Jane Grant,
and expressly disinherited the widow, from whom he had been
estranged. He made no provision for his children, stating
that they were amply provided for by his life insurance. The
will was admitted to probate and respondent herein, Bertrand
Rhine, was appointed executor. The estate consisted of some-
thing over $400 in cash, an automobile appraised at $200, and
accounts receivable totaling $1,441.73.

The mother of decedent paid the sum of $335 toward the
funeral expenses and filed a creditor's claim therefor, which
was allowed and approved. Jane Grant also filed a claim for
$816.75, which was allowed and approved, representing money
paid out by her for hospital and nursing services during the
last illness of decedent.

The executor filed a ''petition for instructions and first
account,'' showing that, contingent upon a proposed sale of
the automobile, there would be in his hands approximately
$500 cash and accounts receivable totaling $1,344.50 which
might or might not be collectable. The executor requested
permission to pay attorney's fees and to pay the claims for
expenses of funeral and last illness on a pro rata basis.
He further sought instructions with respect to the further and
final disposition of the estate. Appellant widow filed objec-
tions, asserting that the payments made by Jane Grant and
decedent's mother for expenses of last illness and funeral
were voluntary, and requesting that the balance of the estate,
after payment of proper expenses, be set aside to her. The
trial court approved the executor's account except in minor
particulars not here material, overruled the widow's objec-
tions thereto, and denied her petition to set aside the estate.

The main question presented by this appeal relates to the
status of the claims of Jane Grant and Mrs. A. L. Kemmerrer,
mother of decedent, for their advances. Appellant argues
that the court erred in impliedly holding that these claimants
are entitled to reimbursement for their voluntary advances,
stating: ''These items were admittedly paid by volunteers to
the primary creditors. This constitutes payment within the
language of Probate Code, section 645.'' Further, it is
urged, section 645 of the Probate Code, requiring that funeral
and last illness expenses be *paid* before an estate may. be

assigned to the widow or children, contains no requirement of reimbursement to those who have voluntarily paid such expenses as a prerequisite to such assignment.

In other words, according to appellant, if the doctors, the nurses, the hospital and the undertaker have received their money and therefore have no claim against the estate, then such expenses are to be deemed "paid" within the meaning of section 645 and the surviving widow is entitled to receive the estate free of the claims of those who assumed to arrange for the care of the decedent during his last illness and for his decent burial. If law and good morals should be one and inseparable, it necessarily follows that the contentions of appellant cannot be upheld. ▆ That the appellant's claim herein is not the law was the holding in *Estate of Hincheon,* 159 Cal. 755, 763 [166 P. 47, 36 L.R.A.N.S. 303], where funeral expenses were paid by a devisee under the will, and the court said: "It is not questioned by the respondents that money paid for funeral expenses by one not acting officiously, if reasonable considering the estate of the deceased and the circumstances surrounding the death and burial, will be repaid by the estate to the party paying them. (2 Woerner on American Law of Administration, 2d ed., § 357; *France's Estate,* 75 Pa. 220.) This is a proper, and, indeed, a necessary rule in view of the fact that the burial must often be provided for before an executor or administrator can be appointed." And as was said in *Golden Gate Undertaking Co.* v. *Taylor,* 168 Cal. 94, 98 [141 P. 922, Ann. Cas. 1915D 742, 52 L.R.A.N.S. 1152], "It is seemly and proper, indeed necessary, that decent burial should be given to the body of a deceased person within a very short period after death. Ordinarily, arrangements for such burial must be made, and the expense incurred, before the appointment of an executor or administrator."

▆ With respect to both of the claims, for funeral expenses and for expenses of the last illness, we are in accord with the language used in *Andrade* v. *Azevedo,* 9 Cal.App.2d 495, 496, 498 [50 P.2d 80], as follows: "Moreover, an heir who has an interest in an estate and pays claims of this character against the estate does not act officiously and is not a 'volunteer' within the rule that a volunteer is not entitled to subrogation. This being so, the estate should repay him."

We perceive no difficulty in applying the doctrine of subrogation to the two claims presented in the instant cause.

To the contention that the claimants are mere "volunteers," the answer we think, is clear that they were neither "volunteers," "Intermeddlers," nor "acting officiously," within the intent and purpose of the equitable policies governing the application of the doctrine.

"Subrogation," as is stated in 50 American Jurisprudence 683, quoting from cited cases, "is a creature of equity, having for its purpose the working out of an equitable adjustment and the doing of complete and perfect justice between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it, and preventing the sweeping away of the fund from which in good conscience the creditor ought to be paid. . . ."

Again quoting from American Jurisprudence (vol. 50, § 7, p. 685) : "The doctrine of subrogation is not a fixed and inflexible rule of law or of equity. It is not static, but is sufficiently elastic to take within its remedy cases of first instance which fairly fall within it. Equity first applied the doctrine strictly and sparingly. It was later liberalized, and its development has been the natural consequence of a call for the application of justice and equity to particular situations. Since the doctrine was first ingrafted on equity jurisprudence, it has been steadily expanding and growing in importance and extent, and is no longer, as formerly, limited to sureties and quasi sureties, but is now broad and expansive and has a very liberal application. As now applied, it is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. Its use to enforce restitution in order to prevent unjust enrichment has elsewhere been pointed out." (See 50 Am.Jur., §§ 2, 4.)

"The doctrine of subrogation embraces all cases where, without it, complete justice cannot be done. Bottomed on this premise, there is, it has been said, no limit to the circumstances that may arise in which the doctrine may be applied. . . ."[1]

Aside from the California cases to which we have heretofore referred, it is noted in American Jurisprudence

[1] Citing *Federal Land Bank* v. *Godwin*, 107 Fla. 537 [145 So. 883]; *Wyoming Bldg. & L. Assn.* v. *Mills Const. Co.*, 38 Wyo. 515 [269 P. 45, 60 A.L.R. 418].

(vol. 50, p. 610) as follows: "Devisees have an interest in the property of a decedent and so are generally entitled to the rights of the creditor where they furnish funds to discharge debts or claims against the estate. The same is true of legatees. Thus, a legatee whose legacy has been absorbed in the payment of debts of the testator may have it out of the undivided realty by subrogation. Devisees and legatees discharging mortgages on the estate may be substituted to the mortgagee's rights. An heir paying debts or claims against the estate may be entitled to subrogation. So, a widow will be subrogated to the rights of her husband's creditors against his estate to the extent that she has paid such indebtedness from her own means." As heretofore noted, the claimant who paid the expenses of decedent's last illness was the sole beneficiary under his will.

The funeral expenditures made by the mother appear on their face to be reasonable, and the record presents no basis for a contrary conclusion. Nor does the record disclose any foundation for a conclusion that the expenses of the last illness were not reasonable and necessarily incurred. The mother, after the surviving spouse or children, is liable for the reasonable cost of interment (Health & Saf. Code, § 7100). Further, section 7101 of the same code provides that the estate of a decedent in this state shall be charged with the reasonable cost of interment, and a suitable family plot and memorial proportionate to the value of the estate and in keeping with the standard of living adopted by the decedent. By the Probate Code, expenses of the last illness and interment are preferred charges against the estate and have priority over a family allowance. (Prob. Code, § 950.) The clear policy of the law as expressed in the enactments of the Probate and Health and Safety Codes referred to in this opinion is that funeral and last illness expenses shall be borne by the estate of the decedent. Any other policy would penalize those who step forward with financial assistance in the hour of need, and who do so with no hope of personal gain but with the highest of motives, based upon the real philosophy of human relations. The law countenances no such unjust and inequitable policy.

In view of the foregoing, other points raised do not require discussion.

That portion of the order from which this appeal was taken is affirmed.

Doran, J., and Drapeau, J., concurred.