HARRY P. KERSHAW *et al., Ex'rs vs.* HARRY P. KERSHAW *et al.*

AUGUST 3, 1956.

PRESENT: Flynn, C.J., Condon, Roberts, Andrews and Paolino, JJ.

Paolino, J. This is a bill in equity for the construction of certain provisions of a will and for instructions to the executors thereof. When the cause was ready for hearing for final decree in the superior court it was certified to this court for determination under the provisions of general laws 1938, chapter 545, §7. The records show that the pleadings were duly closed; that a guardian *ad litem* was appointed to represent the interest of any minors; that a member of the bar was appointed to represent possible future or contingent interests; and that a decree *pro confesso* was duly entered as to respondents who had not answered.

It appears that some years before his death the testator, an experienced businessman, opened three bank accounts

in the joint names of himself and his son, and also transferred all of his real estate to himself and his son as joint tenants. The son and a grandson were the sole heirs and next of kin of the testator, the grandson being the only child of the deceased daughter of the testator. At his death the testator was domiciled in the town of Portsmouth in this state, and left a will in which he made certain specific bequests. In clause Third thereof he provided:

> "I give, devise and bequeath to my said son, Harry P. Kershaw, any real estate standing in my name or belonging to me at the time of my decease; and all tangible personal property including automobiles, household furniture, jewelry, and cash on hand, or belonging to me, the real estate if any in fee simple and the tangible personal property absolutely."

Clause Eleventh of the will provided as follows:

> "I direct that all legacy, inheritance, estate and all other taxes due from my estate be paid out of the rest and residue of my estate."

Clause Twelfth thereof provided that the rest and residue, which was by far the bulk of the estate, should be divided into two parts. The respondent B. M. C. Durfee Trust Company was named trustee of one part of said residue and the respondent Fall River National Bank the trustee of the other part. The testator's son was to receive five sixths of the income and as much of the principal as the trustees deemed necessary for his comfort, maintenance and support, and the testator's only grandson was to receive one sixth of the income and as much of the principal as the trustees deemed necessary for his comfort, maintenance and support. This residuary clause further provided in substance that after the settlement of the estate and after the payment of all specific legacies, inheritance taxes, taxes of all kinds, costs of administration, funeral bills and other bills and obligations, all the rest and residue of the estate in the hands or possession of the executors was to be paid over to the above-mentioned trustees for the purposes therein set forth.

At the time of the testator's death there stood in his own name securities valued at $282,256.88, a checking account in the Florida National Bank with a balance of $245.02, and an automobile valued at $825; and there stood in the joint names of the testator and his son real estate valued at $48,225, a checking account in the Fall River National Bank with a balance of $9,406.29, a checking account in the Fall River Trust Company with a balance of $38,385.32, and an account in the First Federal Savings and Loan Association in Fall River with a balance of $5,300.

The will was duly probated and the executors thereof, who were appointed by the probate court, in due course filed their first and final account which was allowed by that court. However, there was a difference of opinion as to whether the executors or the trustees should bear the burden of the estate and inheritance taxes on the jointly held property, and the trustees appealed to the superior court from the order allowing the executors' account. That appeal is still pending there.

Thereupon the executors brought the present bill in equity in the superior court for construction of certain provisions of the will. The decree certifying the cause set forth the questions raised by the bill and answer, and then included, at the request of the parties, findings of fact made by the trial justice, as follows: "That it was the intention of the testator, at the time the joint accounts referred to in the bill and answer were created, to make a present gift, and at all times thereafter the property in the accounts belonged to the testator and his son with the intention that they were equal owners therein for all purposes, and on the death of either what was in said accounts would go and belong to the survivor."

When a bill is brought for the construction of or for instructions relative to a will or trust deed the provisions of G. L. 1938, chap. 545, §7, do not require the superior

court to make findings of fact. *Horton* v. *Horton,* 46 R. I. 492, 495. Section 7 provides that the superior court *shall* certify to this court for determination all bills in equity for construction of or for instructions relative to any will or trust deed "whenever and as soon as any such cause is ready for hearing for final decree, and may, after hearing any other cause for final decree, certify such cause for the determination of the supreme court."

We are of the opinion that the first portion of §7 was meant to reserve to this court exclusively the determination of bills for the construction of a will or instructions relative thereto; that certification of such a cause to this court is mandatory whenever and as soon as it "is ready for hearing for final decree"; and that the second portion of §7 is merely permissive and does not relate to bills in equity solely for construction of or for instructions relative to wills or trust deeds. In our judgment, therefore, the findings of fact in the decree as made by the trial justice at the request of the parties should be treated as surplusage and the cause be considered under the first part of §7 as one solely for the construction of a will.

Certain of the questions submitted, so far as they relate to whether or not title to the joint bank accounts and to other jointly held property passed to the son by operation of law upon the death of the testator or under the will, are not properly before us on the instant certification. For purposes of the construction of the will it is immaterial who is entitled thereto and whether such title passed by virtue of the validity of the joint accounts or under clause Third of the will. Consequently we need not answer specifically any of such questions.

The other certified questions in substance present two issues for determination, first, whether the money in the checking account standing in the testator's name in the Florida National Bank passed under clause Third of the will to the testator's son Harry P. Kershaw as "cash on

hand, or belonging to me," or whether that money was not included in the quoted language and therefore falls into the residuary estate; and second, whether the estate and inheritance taxes arising from the real estate and bank accounts, all of which stood in the joint names of the testator and his son, should be paid by the estate or by Harry P. Kershaw individually.

In our opinion the deposit in the checking account in the Florida National Bank standing in the name of James Kershaw individually was intended to pass and belong to Harry P. Kershaw under clause Third of the will. A careful reading thereof leaves no doubt as to the intention of the testator on this point. He expressed himself in clear and unambiguous language when he bequeathed to his son all "cash on hand, or belonging to me." The fact that the title to the money in the checking account may technically be in the bank is immaterial. The important thing is the intention of the testator. *Industrial Trust Co.* v. *Saunders,* 71 R. I. 94.

In that case this court construed the provision of a will giving "all my Money," as being intended by the testator to mean all his property that was not real estate. If we apply to the instant case the reasoning in the *Saunders* case, particularly at page 100, it is clear that by the language in clause Third of the will giving "cash on hand, or belonging to me" to his son, the testator intended to include all money deposited in any checking account standing in his name individually and subject to his control and demand. Therefore we are of the opinion that the money so deposited in the checking account in the Florida National Bank passed to the son Harry P. Kershaw under clause Third of the will and that it did not fall into the residue of the estate.

The second question in substance relates to whether there should be an apportionment of the estate and inheritance taxes on the money and property which stood jointly

in the names of the testator and his son at the time of the testator's decease. These involved three joint bank accounts and certain jointly held real estate. They will be treated together since each presents the same legal problem and is governed by the same principle of law.

It is our opinion from an examination of the whole will that the testator clearly intended that the burden of such taxes was to be borne entirely by the residuary estate. The language used to express this intention in clause Eleventh of the will is clear, comprehensive and unambiguous, namely: "I direct that all legacy, inheritance, estate and *all other taxes due from my estate* be paid out of the rest and residue of my estate." (italics ours) We know of no other meaning to be given such language which would reasonably carry out the expressed intention of the testator. No other provision qualifies that comprehensive direction.

In the circumstances it is clear that regardless of who was entitled, upon the testator's death, to the jointly held property or how the title thereto passed, such property was required by federal law to be included *for tax purposes* in the decedent's gross return. Consequently the taxes on such property clearly come within the testator's direction to pay "all other taxes due from my estate" as provided in clause Eleventh.

The facts in the case at bar differ from those in *Hooker* v. *Drayton*, 69 R. I. 290, and *Industrial Trust Co.* v. *Budlong*, 77 R. I. 428. Each of those cases concerned property to which the testator had no actual and personal property interest at the time of his death, and more importantly neither of them contained an explicit direction that "all other taxes due from my estate" should be paid out of the residue. In the instant case, the testator had an actual interest in the jointly held property up to the time of his death. Moreover the payment of taxes is not required on the ground that this property necessarily was within the true estate of the testator, that is, in the sense that such

property would descend directly from him by operation of law if there were no will, or by virtue of the provisions of a will if he died testate. Rather it is because here the payment of taxes on such jointly held property is legally *due from his estate* and therefore such payment is dictated by the clear, unambiguous and comprehensive direction in clause Eleventh.

The parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Hudner* and *Smith, Norman F. Smith,* of Fall River, Massachusetts, for petitioners.

*J. Russell Haire,* for respondents.