[Civ. No. 21927. Second Dist., Div. Two. Feb. 6, 1957.]

Estate of GEORGE MARTIN ADAMS, Deceased. ROBERT W. HELD, Appellant, v. WALTER J. HELD et al., Respondents.

Lawler, Felix & Hall and R. F. Outcault, Jr., for Appellant.

Zeman, Hertzberg & Schekman and Harrison W. Hertzberg for Respondents.

MOORE, P. J.—George Martin Adams deceased February 19, 1955. Petitioner Walter J. Held was duly qualified as the executor of decedent's estate. Upon a trial of the executor's petition for a determination of ''the rights of all persons to said estate and all interests therein and determine to whom distribution of said estate should be made'' the court below entered its decree that decedent left a will ''that distribution of the estate shall be under the provisions of paragraph Seventh of said will.'' Whereupon the decree ordered that the estate was to be distributed to Elizabeth Adams Strahan and Francis Adams, children of decedent, share and share alike.

The controversy at the trial was, whether the provisions of Article Sixth or those of Article Seventh should control the distribution of the estate. Because the court ordered distribution to be made to the persons named in Article Seventh, Robert Held, named alternate legatee in Article Sixth, demands reversal of the decree on the ground that by virtue of the contents of Article Sixth, the entirety of the estate belongs to him.

The two articles in dispute are as follows:

''Sixth: Provided that the appraised inventory value of my estate shall at the time of my death be less than Fifteen Thousand Dollars, then all of the provisions set forth in paragraph Fifth, (a), (b), and (c), above, shall be of no effect, and my said estate shall, after the payment of debts and expenses of administration, be distributed as follows:

''(a) To Millie Held, my sister-in-law, now residing at 915 [sic] Oxford Street, Berkeley, California, Five Thousand ($5,000.00) Dollars;

''Provided, that should the said Millie Held predecease me, then said Five Thousand ($5,000.00) Dollars shall go to her son, Robert Held, by right of representation.

''(b) The residue of said estate, after the payment of

the aforesaid sum of Five Thousand ($5,000.00) Dollars, shall be distributed in equal shares to the following persons:

"Elizabeth Adams Strahan, now residing at 2861 Club Drive, Los Angeles, California, my daughter.

Francis Merrill Adams, now residing at 4042 Brighton Avenue, Los Angeles, California, my son.

"Seventh: Provided that the appraised inventory value of my estate shall at the time of my death be five Thousand ($5,000.00) Dollars or less, then all of the provisions set forth in paragraph Fifth (a), (b), and (c), and in paragraph Sixth (a), and (b), above, shall be of no effect, and my estate shall, after the payment of debts and expenses, be distributed as follows:

"(a) To Millie Held, my sister-in-law, now residing at 9115 Oxford Street, Berkeley, California, all of my cash and stocks except Fifty ($50.00) Dollars each to my son and daughter, Francis Merrill Adams and Elizabeth Adams Strahan.

"I desire this to be done, because anything I have, I feel belonged to my wife Nina."

Millie Held predeceased decedent. It follows that if Article Sixth should prevail, Robert Held is entitled to $5,000 by right of representation as the alternate beneficiary to his mother, Millie, by virtue of the fact that the appraised inventory value of the estate at the date of Mr. Adams' death was less than $15,000 and more than $5,000. But if Article Seventh is applied, the gift to Millie must lapse and the property be distributed entirely to decedent's children, part as legacies, bequeathed by the will: the balance by virtue of their rights of intestate succession. The entirety of the estate when Mr. Adams deceased was appraised at $4,818.89 and that sum is recited in the inventory. However, at the same time his estate was entitled to a lump sum benefit from the Social Security Administration to defray costs of burial to wit, $228.90. Had such sum been added to the inventory, the value thereof would have exceeded $5,047 which would have required the will to be governed by Article Sixth.

But the trial court, upon a review of the will alone, determined that the insurance should not be included in the inventory and upon such construction distributed the estate to decedent's children to the exclusion of Robert Held.

This presents for decision the question whether the *proceeds of an insurance policy which are to be payable only*

*insofar as necessary to reimburse the party paying the expense of burying the insured are properly includible in the "appraised inventory value" of the insured's estate computed at the time of his death?*

The insurance "policy" here is the Old Age and Survivors Insurance benefit provided in Title 42 of the United States Code, section 402(i). That section authorizes payment of a lump sum death benefit to the widow of a qualified insured; but if, as here, there exists no surviving spouse, three times the insured's primary insurance or $255, whichever is the smaller, shall be paid "to any person or persons, equitably entitled thereto, to the extent and in the proportions that he or they shall have paid the expenses of burial" of the decedent. The son and daughter of Mr. Adams paid the initial expenses of his burial, reimbursed themselves from the estate, and the executor in turn applied for and received the benefits authorized by section 402(i), *supra.*

■ While the proceeds of an insurance policy upon the life of a deceased payable directly to a third person beneficiary are not properly includible in the decedent's estate (*Estate of Welfer,* 110 Cal.App.2d 262, 265 [242 P.2d 655]; *Turner* v. *Metropolitan Life Ins. Co.,* 56 Cal.App.2d 862, 865 [133 P.2d 859]) the estate has an interest in such insurance and must include its value to the extent that the proceeds are payable to or for the benefit of the estate. (*Estate of Ward,* 127 Cal.App. 347, 358 et seq. [15 P.2d 901]; 20 Cal.Jur.2d § 433, p. 635.) The lump sum from the Social Security Administration was payable to some person "equitably entitled" to the extent that he had borne the expense of burying the deceased. ■ Since the estate stands primarily liable for decedent's reasonable funeral and burial expenses (Prob. Code, § 950; *Golden Gate Undertaking Co.* v. *Taylor,* 168 Cal. 94, 99 [141 P. 922, Ann.Cas. 1915D 742, 52 L.R.A.N.S. 1152]; *In re Kemmerrer,* 114 Cal.App.2d 810, 813 [251 P.2d 345, 35 A.L.R.2d 1393]), the lump sum payment under section 402(i) could be made only to a creditor of the estate, someone subrogated to the rights of the estate, or the estate itself. In any event, payment would operate to discharge an obligation primarily owed by the estate. ■ When a debtor's obligation is paid by a third party, the debtor's assets have been enlarged to the extent of the discharge. (*Old Colony Trust Co.* v. *Commissioner of Int. Rev.,* 279 U.S. 716 [49 S.Ct. 716, 73 L.Ed. 918]; *United States*

v. *Boston & Maine R. Co.,* 279 U.S. 732 [49 S.Ct. 505, 73 L.Ed. 929].) While the last-cited cases deal with Federal income taxation, they amply illustrate the economics involved. Respondent urges that mere reimbursement cannot be enhancement of assets. In other words, if the estate is valued at $4,800, then pays out $250 and is reimbursed, the assets are still worth $4,800. Of course, the fallacy with this reasoning is that the estate would have required $5,050 worth of assets to have paid the debt without reimbursement and yet retained $4,800 to distribute. ■ Thus, inasmuch as the estate must be the eventual beneficiary of the Social Security insurance payment, the right to that payment (the "policy") is essentially an asset of the estate at the time of the decedent's demise. ■ The word "estate" when used in connection with probate proceedings encompasses the totality of the assets and liabilities of the decedent, including all manner of property, real and personal, choate or inchoate, corporeal or incorporeal. (*Estate of Glassford,* 114 Cal.App. 2d 181, 189-190 [249 P.2d 908, 34 A.L.R.2d 1259].)

No reason exists in this case to attempt to apply any presumptions as to the intent of the decedent—for example, testacy against intestacy, blood relations against strangers, or the recital of the decedent that all his property in truth belonged to his wife. Mr. Adams prescribed a definite rule by which to determine which clause of his will should apply. There is no ambiguity. The only question presenting any difficulty relates to how much his estate was in fact worth on the day of his death. What was the value of the inventory on that day and before the funeral expenses had been actually incurred. Also, what was the value then of a legal commitment to meet burial expenses? ■ The cases are clear that the burial expenses chargeable to the estate are those "reasonable" in view of the manner in which the decedent lived, his station in society and the condition of his estate. (*Estate of Kemmerrer, supra,* 114 Cal.App.2d 810, 813; *Estate of Dennis,* 110 Cal.App.2d 667, 670 [243 P.2d 579].) It cannot be said that $228.90 was an unreasonable charge for the interment services rendered to the executor.

■ From the record it is beyond dispute that the obligation of the Social Security Administration was the lump sum $228.90; that the inventoried value without such lump sum was $4,818.89; that by including the $228.90 in the inventory, the appraised inventory value was $5,047.79 which

is more than $5,000 (paragraph Seventh) and by the terms of paragraph Sixth is payable to Robert Held.

The decree is reversed with instructions to order the executor to pay and distribute the total assets of decedent's estate to Robert Held.

Fox, J., and Ashburn, J., concurred.

The petition of respondents Francis Merrill Adams and Elizabeth Adams Strahan for a hearing by the Supreme Court was denied April 2, 1957.