[Civ. No. 22658. Second Dist., Div. Three. Aug. 18, 1958.]

Estate of KATHRYN Z. WHITNEY, Deceased. ROBERT A. ZIMMERMAN, Appellant, v. THE ORIENTAL MISSIONARY SOCIETY (a Nonprofit Corporation) et al., Respondents.

Stanley C. Anderson for Appellant.

Thomas S. Bunn for Respondents.

VALLÉE, J.—Appeal from part of a judgment determining heirship. The question is the proper construction of a will.

The holographic will of the decedent, Kathryn Whitney, reads:

"Last Will and Testament

"I, Kathryn Z. Whitney at the age of seventy-five and being of sound mind and memory, and not acting under the influence of any person whatever, declare this my last Will and Testament.

"I direct that my executor here after named, pay my funeral expenses. That he see that money from estate be tythed to the amount of twenty-five per cent and given to the Nazerine Church—head quarters at Kansas City Mo The Oriental Missionary Soceity head quarters in Los Angeles Cal and National Missionary Soceity head quarters Marion Indiana for missionary work. If for any reason this money

cannot be used for missionary work—then to help some poor theological students.

"I want five hundred dollars given to my daughter-in-law to pay her for grave and vault to put casket in.

"If anything should come up at this time in regard to my former husband Norman G. Whitney or his estate it is my wish that he be given the sum of one dollar What I have was mine before I met Mr. Whitney.

"Then I give and bequith to my grandson Robert A. Zimmerman any money and stocks or other personal property that I may have at the time of my death.

"I name and appoint my Grandson Robert A. Zimmerman the executor of this my Will with out bond and revolk any former Will made by me

"Signed

"Kathryn Z. Whitney

"February fifteen Nineteen Hundred
and forty-nine."

The court found the will is ambiguous and uncertain but that it means there shall be distributed to the three charities, to be equally divided among them, 25 per cent of the distributable estate. The judgment decreed that on distribution of the estate 8⅓ per cent of the distributable assets of the estate be distributed to each charity and that 75 per cent be distributed to decedent's grandson, Robert A. Zimmerman. Robert A. Zimmerman appeals from that part of the judgment decreeing that 8⅓ per cent of the distributable assets of the estate be distributed to each charity.

Appellant claims that by the phrase "money from estate" the testatrix meant only cash, and not the distributable assets of the estate as held by the probate court. Respondents say the probate court's interpretation of the will is in accord with the intention of the testatrix and the applicable law.

At the hearing, the probate court, over appellant's objection, admitted in evidence an undated holograph in the handwriting of decedent and a part of the petition in the present proceeding to determine heirship. Appellant asserts the rulings were prejudicially erroneous. ▮ The will was signed February 15, 1949. The testatrix died October 17, 1955. There was no evidence as to when the undated holograph was written. The ruling admitting the holograph was clearly erronous. The uncertainty is patent—it appears on the face

of the will. When an uncertainty arises upon the face of a will as to the meaning of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding the oral declarations of the testator as to his intentions. (Prob. Code, § 105; *Estate of Sargavak*, 41 Cal.2d 314, 319-320 [259 P.2d 897].) There was no showing that the holograph constituted a circumstance under which the will was made. The parts of the petition to determine heirship admitted in evidence showed that the appraised value of the estate was $21,014.98; that the amount of cash on hand at decedent's death was $138.98; that on January 8, 1949, 38 days before the will was executed, the testatrix established a trust account for the benefit of appellant in the amount of $3,922.67, and that on March 9, 1955, she established another trust account for the benefit of appellant in the amount of $524.16, and that the accounts had been paid to appellant and at no time had been a part of the estate. There was no error in admitting the parts of the petition to determine heirship in evidence. The petition was signed by appellant and it was a representation to the court by appellant to be considered by it in construing the will. In *Estate of Sargavak, supra,* 41 Cal.2d 314, it is said (p. 319):

"As there was an 'uncertainty' on the face of the will the trier of fact may consider such matters 'as the size of the estate, the property involved in the gift, the circumstances of the parties and their relation to each other and to the testator.'"

Since we have concluded that construing the will by its four corners together with the parts of the petition to determine heirship received in evidence, the ultimate conclusion of the probate court was correct, the error in admitting the holograph is of no moment.

 "A will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect if possible. Each case depends on its own particular facts and precedents are of small value. (*Estate of Wilson,* 184 Cal. 63, 66-68 [193 P. 581].) Lord Coke made the sage observation that 'wills and the construction of them do more perplex a man than any other learning, and to make a certain construction of them, this excedit juris prudentum artem.' (*Roberts* v. *Roberts,* 2 Bulstr. 130, 80 Eng. Rep. 1008.)" (*Estate of Luckel,* 151 Cal.App.2d 481, 487 [312 P.2d 24].)

"Where the meaning of any part of a will is ambiguous or

doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail." (Prob. Code, § 103.)

The word "money" used in wills is essentially ambiguous. (Thompson on Wills, 2d ed., 384, § 245.) In a bequest it means money and money only, unless there is in the context of the will something to indicate that the testator intended a more extended meaning. (*Estate of Boyle*, 2 Cal. App.2d 234, 236 [37 P.2d 841].) When used in a will it has no fixed or technical meaning, but is a term of flexible scope having either a restricted or a wide meaning according to the signification which the testator intended to give the word, and may be used to mean cash only, personal property, or even wealth—that is, property of any kind that may be converted into cash. (*Industrial Trust Co.* v. *Saunders*, 71 R.I. 94 [42 A.2d 492, 495]; 26 Cal.Jur. 970, § 269; 96 C.J.S. 162, § 759(d); anno.: 93 A.L.R. 514; 173 A.L.R. 656.)

Where the context of a will discloses the intent of the testator to attribute to the word "money" a specific meaning which is more comprehensive than the meaning ordinarily given to it, that meaning will be adopted and may comprehend any class of property defined by the context. (*In re Rogers' Estate*, 91 N.J.Eq. 294 [109 A. 16, 17]; *In re Mc-Kendrie's Estate*, 150 Misc. 665 [271 N.Y.S. 228, 230]; *Mann* v. *Haines*, 146 Kan. 988 [73 P.2d 1066, 107.3]; *Hinckley* v. *Primm*, 41 Ill. App. 579.)

In determining whether testatrix meant only cash or the distributable assets of her estate by her use of the words "money from estate be tythed to the amount of twenty-five per cent" in the bequest to respondents, we believe a broad construction of the word "money" is required. A reading of the will from all four corners, in light of testatrix' apparent intention at the time she made it, indicates the more extended meaning should be given. Testatrix was 75 years old at the time she made her will and, although the will contains mistakes of spelling, it is fairly well written and reflects her awareness not only of the nature of her act and persons to be benefited thereby, but the nature of her property—money, stocks, and other personalty.

■ The testatrix directed that her executor "see" that money from her estate be "tythed" to the amount of 25 per cent and given to the named charities for missionary work. And she said that if "this money cannot be used for missionary work—then to help some poor theological students." The testatrix did not direct her executor to "see" that money *in* the estate be tithed; she directed that he "see" that money "from" the estate be tithed. Her language presupposes action by the executor in liquidating the estate for the purpose of obtaining funds to make distribution to the charities. One meaning of "from" is "out of." (Webster's New Inter. Dict., 2d ed., 1012.) The phrase "from estate" manifestly enlarges the term "money" to include all property which the testatrix might have at death. ■ "Estate" in the sense used obviously means "the totality of the assets and liabilities of the decedent, including all manner of property, real and personal, choate or inchoate, corporeal or incorporeal." (*Estate of Adams*, 148 Cal.App.2d 319, 323 [306 P.2d 623, 314 P.2d 745].)

■ Testatrix' use of the word "tythed" is of significance.[1] It implies that the value of that which is to be tithed must first be determined. A "tithe" is a tenth part of some specific thing. (41 Words and Phrases 661.) To "tithe" is to pay or give a tenth part of some specific thing. (Webster's New Inter. Dict., 2d ed., 2655.) Here the testatrix increased the amount to be given from a tenth to a quarter. Her direction to her executor is, in effect, to "see" that 25 per cent of her estate be taken and given to the named charities.

■ The residuary clause reads: "Then I give and bequith to my Grandson Robert A. Zimmerman any money and stocks or other personal property that I may have at the time of my death." The word "Then" can mean only one thing: after the executor had done that which she had directed him to do, "Then. . . ." The word "any" modifies the words which follow, showing knowledge on the part of testatrix that he would not receive *all*. No comma appears after the word "money" to suggest that "any" should modify only the word "money." As it stands, "any" modifies money and stocks and personal property.

■ Appellant argues that the word "stocks" appears in the residuary clause only, indicating testatrix divided her assets into the categories of "money" and "stocks." The

---

[1]The word "tithe" was also formerly spelled "tythe." (9 The Century Dict. and Cyclopedia 6355.)

phrase "any money and stocks or other personal property" does not conflict with the broad construction of the phrase "money from estate" in the previous provision. The later provision must be read in light of the prior provisions of the will. The phrase "money from estate" is a more comprehensive term than the word "money" standing alone, as used in the residuary clause. Testatrix, having indicated her intention in the first bequest that the executor tithe up to 25 per cent of the money from her estate to the named charities after payment of funeral expenses, it necessarily follows that when she made the final bequest to appellant of "any money and stocks or other personal property" in her estate at her death she meant *that which remained after all the prior bequests had been distributed* and her directions carried out. (See *Estate of Miller*, 48 Cal. 165 [17 Am.St.Rep. 422], construing the word "money" in a will as synonymous with "property and estate"; *Estate of Carrillo*, 187 Cal. 597 [203 P. 104], construing a bequest of "1 third of cash that is left after my demise" in a holographic will as including a note and mortgage; *In re Mirick's Estate*, 82 N.Y.S.2d 778, construing the words "money of my estate" as used in a holographic will as including all personal property not otherwise bequeathed; *In re Smith's Will*, 131 N.Y.S.2d 390, construing the words "All money in" various depositaries in a holographic will as encompassing the testatrix' entire estate; *McCabe* v. *Cary's Ex'r*, 135 Va. 428 [116 S.E. 485], construing a bequest to a sister of "the use of the income from all money in my name from my father's & mother's estate" as including all property which the testatrix had received from her father and mother; *Walcott* v. *Pitcher*, 7 R.I. 555, construing a direction that annuities be paid "by my executor from my estate" as requiring payment from the corpus of the estate.)

It was manifestly the intention of the testatrix that the charities should benefit substantially. Anything less than substantial benefits would not have been provided for division among three charitable institutions or for the help of "poor theological students." The construction of the will urged by appellant—division of 25 per cent of $138.98—would exclude the charities from any real benefits.

We conclude that the phrase "money from estate be tythed to the amount of twenty-five per cent" is used in the will at bar as "property" or "estate." The probate court correctly

concluded that it means there shall be distributed to the three charities, to be equally divided among them, 25 per cent of the distributable estate.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.