293 A.2d 899.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Executor of the Estate of Robert O. Lord vs.* MARIA L. LANCE *et al.*

JULY 31, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This will construction suit seeks instructions relative to the will of Robert O. Lord who died a resident of Narragansett on January 9, 1968. The primary question presented for our determination is whether federal estate and state inheritance taxes are to be paid from the testator's probate estate or should they be prorated over his entire taxable estate.

The controversy arises because of certain actions taken by the testator in 1961. On July 31 of that year he created an irrevocable inter vivos trust. The trust called for the payment of income to the settlor during his life, and upon his death, the corpus was to be paid over to his daughter, Maria. Four days later, on August 4, he executed his will. The will divides the residuary estate into three shares. Maria and her brother are each given a full share. The

remaining share is to be held in trust for the benefit of the testator's fiancée. Upon her death, the trust is to be terminated and the corpus is to be divided into two equal shares with one share going to Maria and the other share going to her brother.

The Internal Revenue Code and the laws of the State of Rhode Island require the assets of the inter vivos trust to be included within the taxable estate. The testator's taxable estate is in excess of one million dollars. Inclusion of the trust assets increases the estate's total tax liability by more than $25,000. The daughter contends that the probate estate should pay the entire tax. The executor takes the position that there should be an apportionment.

The law relative to the apportionment of the so-called death taxes levied on assets within the probate estate and other non-testamentary assets which are included in a testator's taxable estate is well settled especially since it has been repeated by this court several times.

Running through all these cases is the basic proposition that there will be an apportionment of such taxes unless the testator gives a clear and unambiguous direction to the contrary.[1] *Industrial National Bank* v. *Barrett,* 101 R. I. 89, 220 A.2d 517 (1966); *Boyd* v. *Jordan,* 92 R. I. 232, 168 A.2d 286 (1961); *Kershaw* v. *Kershaw,* 84 R. I. 429, 125 A.2d 126 (1956); *Industrial Trust Co.* v. *Budlong,* 77 R. I. 428, 76 A.2d 600 (1950); *Union Trust Co.* v. *Watson,* 76 R. I. 223, 68 A.2d 916 (1949); *Hooker* v. *Drayton,* 69 R. I. 290, 33 A.2d 206 (1943).

With this rule in mind, we shall now quote the clause in the will which is pertinent to this action:

> *"First:* I direct that all my just debts, funeral expenses and the expenses of administering my estate

---

[1]For an instance where the requisite clarity of expression resulted in the probate estate shouldering the entire tax burden, reference is made to *Industrial National Bank* v. *Bennett,* 110 R. I. 448, 293 A.2d 924 (1972).

shall be paid from my estate in the due course of the administration thereof. I further will and direct that all estate, inheritance, succession and/or transfer taxes which may be payable upon or with respect to any securities or property belonging to my estate, or any interest hereby created therein, shall be paid out of the residue of my estate."

It is clear that the testator in speaking of "my estate" is speaking of his probate estate[2] rather than his taxable estate.

There is not a single word in the quoted clause indicating that the testator had any intention whatsoever of exonerating his daughter from the payment of the death duties that are allocated to the inter vivos trust. Both the will and trust documents show care and precision in their preparation. If the testator wished to burden the residue of his probate estate with the taxes due the federal and state governments, it would have been an easy matter for him or his attorney to use the clarity of expression which would have satisfied our rule.

There is to be an apportionment and as a guide to be followed the attention of counsel is directed to 26 U.S.C.A. §§2206 and 2207 (1954). These sections relate to the apportionment of the federal estate tax in instances of life insurance and property subject to apportionment. Their use was recommended in *Industrial Trust Co. v. Budlong, supra*. It is also suggested that any credit given for the gift tax paid by the testator should be deducted from the total federal estate tax and thereby apportioned by all persons charged with the burden of the tax. This is the rule in *In re Blumenthal's Estate*, 182 Misc. 137, 46 N.Y.S.2d 688 (1943), aff'd, *Application of Schmidlapp*, 267 App.Div. 949, 47 N.Y.S.2d 652, 56 N.E.2d 588 (1944). The reason

---

[2]Probate estate describes that property belonging to the testator title to which actually passes from him to others under his will. Obviously, it does not include property disposed of by the inter vivos trust.

given by the New York court is that the inclusion of the inter vivos trust in the total gross value of the estate makes the estate taxable at a higher rate and therefore adds to the amount of the tax. This tax increase works to the detriment of persons who gain no benefit from the inter vivos transfer. Consequently, the court observed, "[u]nder these circumstances equity requires that the credits should redound to the advantage of the entire group of parties charged with the burden of the tax and not confined to the donees only." This court in *Budlong* endorsed the rationale of *Blumenthal*. It is also cited approvingly in *Beatty* v. *Cake*, 242 Ore. 128, 407 P.2d 619 (1965).

The parties may present to this court for approval a form of judgment in accordance with this opinion, which will be entered in the Superior Court.

*Joseph G. Kinder, Paul A. Tucker,* for plaintiff.

*Jack L. Oatman, Jack L. Oatman, Jr.,* of San Diego, Calif., for defendants.