220 A.2d 517.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND *et al.,* Executors *vs.* EVELYN M. BARRETT *et al.*

JUNE 23, 1966.

PRESENT: Roberts, C. J., Paolino and Joslin, JJ.

PAOLINO, J. This is a bill in equity brought by the Industrial National Bank of Rhode Island, executor and trustee, and Aline C. Lathan, co-executor, under the will of Mary M. Tilley, deceased, for construction of the latter's will and for instructions to the executors and trustee thereunder. The adult respondents have filed an answer to the bill and all minor and contingent interests and those of persons unascertainable or not in being are represented by a guardian ad litem appointed for that purpose by the court. The guardian has filed an answer neither admitting nor denying the bill's allegations and submitting the interests of his respective wards to the court's care and protection.

After the cause was heard in superior court and was ready for hearing on the final decree it was certified to this court for our determination under G. L. 1956, §9-24-28.

There are no factual issues in dispute, all the allegations of fact contained in the bill in equity and the answers of respondents having been admitted by the parties either in the pleadings or at the certification hearing. In addition the parties have filed an agreed statement of facts concern-

ing the value of stock given by the testatrix to respondents Lathan and Barrett and includible in her gross estate for federal estate tax purposes, the value of the marital trust created under Arthur H. Tilley's will, and the value of Mrs. Tilley's gross estate and her taxable estate.

It appears that Arthur H. Tilley, husband of the deceased, died January 28, 1959. Under the eighth clause of his will, admitted to probate February 5, 1959, he devised the property, which qualified for the full marital deduction, to the Industrial National Bank, in trust, with directions to pay the net income at least quarterly to his wife for life and such amounts of the corpus annually or at more frequent intervals as she should in writing request, for her comfort and support, and without being accountable to any court or remainderman therefor. He also conferred upon her a general testamentary power of appointment over the corpus remaining at her death.

Mary M. Tilley died October 28, 1963. Under the fourth clause of her will, admitted to probate November 7, 1963, she exercised her general testamentary power of appointment to the Industrial National Bank, in trust "to pay over the net income thereof to and for the use and benefit of my granddaughters, Aline C. Lathan and Evelyn M. Barrett * * * equally for and during the term of their natural lives, and upon the death of either of them, to pay over said net income to her issue, *per stirpes* and not *per capita.*" The trustee was also given uncontrolled discretion to pay over to either of said grandchildren, or the issue of any deceased grandchild, for specific purposes, portions of the principal. Finally, the testatrix provided the trust would terminate "twenty one (21) years after the death of the last survivor of the younger grandchild or issue of either grandchild of mine living at my death * * *."

On the date of Arthur H. Tilley's death, Aline C. Lathan and Evelyn M. Barrett and one great-grandchild were in

being. On the date of Mary M. Tilley's death the aforesaid respondents plus six additional great-grandchildren were in being. One great-grandchild was born subsequent to her death.

At various times within the three-year period preceding her death, Mrs. Tilley made gifts of stock to her respondent granddaughters which were included in her estate for federal estate tax purposes at a gross valuation of $92,-995.50. The corpus of the marital trust created under clause eighth of Arthur H. Tilley's will was reported at a value of $65,610.51. The total valuation of her probate estate exclusive of the trust which she appointed was $25,666.18 and the total charges against her estate, including debts, administration expenses, state and federal inheritance and estate taxes total $28,188.44.

The guardian ad litem has filed a brief substantially in accord with that of complainants. Consequently, we shall consider it as part of same when referring to the arguments of the parties.

Under the certification decree we are presented with two principal issues for our determination. The first, raised by the bill in equity, concerns the apportionment of taxes and expenses of administration between the testatrix' estate and the trust created under the fourth clause of her will. The second, raised by the answer of respondents Barrett and Lathan, questions whether the testatrix' exercise of the power of appointment under her husband's will violates the rule against perpetuities and, if so, what persons, and to what extent, are now entitled to share the property.

Since a solution to the first issue is necessarily dependent on a determination of the second, we shall consider the perpetuity problem at the outset.

The complainants contend that Mrs. Tilley's exercise of the power of appointment created under her husband's will

does not violate the rule against perpetuities on two alternative grounds.

First, they say, in clause eighth of his will, Arthur H. Tilley manifested a clear intent to bestow upon his wife an unlimited power to consume the trust principal giving her in effect a general power of appointment exercisable during her lifetime. In support of this contention, complainants point to the broad discretionary power bestowed on Mrs. Tilley to invade the principal for her comfort and support which, coupled with her general testamentary power of appointment, they argue, created an absolute interest although not actually designated as such. In this connection complainants cite cases which hold, in construing language similar to that in clause eighth, that actual "need" of a beneficiary is not a measure of "comfort" and "support"— see *In the Matter of Woollard*, 295 N. Y. 390, *In re Walsh's Will*, 85 N.Y.S.2d 207, and *New Jersey Title Guarantee & Trust Co.* v. *Dailey*, 123 N. J. Eq. 205 — and distinguish those which require the beneficiary to show "reasonableness," "good faith," or that the beneficiary's other assets are factors to be considered as being premised solely on the principle that a life tenant owes other beneficiaries of the trust or other remaindermen, neither present here, a duty not to consume the principal unnecessarily. See 33 Am. Jur., Life Estates, Remainders, etc., §§242, 243, pp. 728, 729.

Consequently complainants urge the perpetuities period should be computed from the date of Mrs. Tilley's death when she exercised the power.

The cardinal principle in the construction of wills is that the intention of the testator if definitely ascertainable and lawful must govern. *Rhode Island Hospital Trust Co.* v. *Bateman*, 93 R. I. 116; *Industrial Trust Co.* v. *Saunders*, 71 R. I. 94.

Clause eighth directs the Industrial National Bank to hold certain property qualifying for the marital deduction:

"* * * in trust, nevertheless, * * * to pay over the net income thereof, at least quarterly, to my wife, Mary M. Tilley, for and during her life, and I authorize and direct my said Trustee, annually or at more frequent intervals, whenever my said wife shall in writing so direct, to pay over to her, *for her own comfort and support,* such part of the principal as she shall direct, and without being accountable to any court or remainderman therefor. Upon the death of my said wife, I confer upon her the power by her Will to appoint the entire corpus of the trust remaining at her death, free of trust, which power is exercisable in favor of the estate of my said wife, or in favor of such other distributees, and in such amounts and upon such terms, trusts, powers and limitations as she shall appoint in her Will." (italics ours)

The problem before us is to ascertain the extent of the gift the testator intended to bestow upon his wife. In cases such as these the extent and nature of a restriction depends upon the intent of the testator and accordingly, since different combinations of language and circumstances are endless, each will must be construed separately, rules of construction being guides only in a general sense.

We note first that instead of giving the property outright to his widow, the decedent chose to impress it with a trust. The provisions of that trust reflect his intent to make available to her something more than a life estate but something less than a fee. As we read clause eighth with reference to the provision for principal payments we find no language to indicate the trustee was invested with discretion to make them in consideration of the widow's actual needs or other assets, but rather that the discretion to determine the dollar amount payable rested solely in Mrs. Tilley.

Nevertheless the power must be read in reference to the matter for which it was given. In this context Mrs. Tilley did not have a general disposing power over the corpus because, in good-faith compliance with the settlor's plan

of disposition, she could withdraw only those sums which she needed for her comfort and support.

However, complainants argue, since neither the beneficiary nor the trustee was accountable to any court or remainderman in regard to these payments, there was no review for her withdrawals, which, in reality, left her in complete control of the fund.

We do not agree. The pertinent language directs the trustee "annually or at more frequent intervals, whenever my said wife shall in writing so direct, to pay over to her, for her own comfort and support, such part of the principal as she shall direct, *and without being accountable to any court or remainderman therefor.*" (italics ours) As we read this sentence the phrase "and without being accountable to any court or remainderman therefor" applies to the trustee only, as it is used as a conjunctive thought to the first half of the sentence of which the trustee is the subject. While the discretion thus conferred on the trustee is broad, it is not so broad as to relieve it of the obligation to exercise the responsibility and in good faith. See *Industrial National Bank* v. *Rhode Island Hospital,* 99 R. I. 289, 207 A.2d 286, and cases cited on page 290. Moreover, and notwithstanding the discretion conferred on the trusteee, Mrs. Tilley would have been accountable for withdrawals not made pursuant to the power bestowed on her. A power including one to direct payments of principal is special or limited if it may be exercised only for the use or support of a certain person, even though that person is the donee of the power. 5 Page on Wills (Bowe-Parker rev.) §45.2, p. 498.

The complainants next contend that even if Mrs. Tilley had only a general testamentary power of appointment, the better-reasoned authorities hold the perpetuity period should be counted from the date of the power's exercise rather than its creation, which would make the gift here vest within the prescribed time.

Before reaching complainants' contention there is an initial problem we feel necessitates some discussion here. Clause fourth of Mrs. Tilley's will provides the trust created thereunder will terminate "twenty one (21) years after the death of the last survivor of the younger grandchild or issue of either grandchild of mine living at my death * * *." It is clear the testatrix set out the measuring lives alternatively as "the last survivor of the younger grandchild" or the "issue of either grandchild * * * ." Since both are modified by the phrase "living at my death" the rule is satisfied on that point.

The difficulty arises in determining what person the testatrix designated when she used the word "survivor." After reading the clause as a whole we believe that this was but an inartistic reference by her draftsman to one of her grandchildren's issue. For a general discussion of this problem, see Perpetuities: A Standard Saving Clause To Avoid Violations Of The Rule, by W. Barton Leach and James K. Logan, 74 Harv. L. Rev. 1141 (1961).

Since this provision was manifestly intended as a savings clause to obviate any violation of the rule, we will give effect to the testatrix' obvious intent that this trust be created and will adopt the above interpretation, thereby removing any initial impediment to complainants' contention on this point. See Gray, The Rule Against Perpetuities (4th ed.) §633, p. 601, where Gray said "When the expression which a testator uses is really ambiguous, and is fairly capable of two constructions, one of which would produce a legal result, and the other a result that would be bad for remoteness, it is a fair presumption that the testator meant to create a legal rather than an illegal interest."

For a recent discussion of the problem involved in constructing testamentary intent see *Manufacturers National Bank* v. *McCoy*, 100 R. I. 154, 158, 212 A.2d 53, 55, where the court said:

"When obscurity exists and the constructional aids are invoked, they are not applied as rules of positive law, or for the purpose of discovering an undisclosed intention of the testator, but to test an otherwise obscure intention by the application of constructional preferences for the purpose of reaching a judicial determination. *Rhode Island Hospital Trust Co.* v. *Thomas* [73 R. I. 277, 281] * * *. This process, according to some of the text writers, involves, within the context of the testamentary language and the circumstances attendant upon the instrument's formulation, an ascertainment of what would have been the probable intention of the average testator faced with the particular problem. 2 Scott, Trusts (2d ed.) §164.1, p. 1160; 5 American Law of Property §22.3, p. 248."

It is fundamental law that when the free alienation of a future interest in property is limited, the interest must vest within lives in being plus twenty-one years from the date of the creating instrument. When the persons who will take or the extent of their interests are to be determined by the exercise of a subsequent power of appointment, the rule against perpetuities requires that the vesting time be computed as if the appointment were a part of the instrument creating the limitation, because until it is exercised the limitation is incomplete.

Nevertheless as the primary concern behind the rule is to prevent restraint on alienation, a distinction is made between general and special powers. In the case of a general power of appointment by deed and will, all courts hold that since the donee has absolute disposing power over the property and may bring it into the market place at any time, he has what is tantamount to a fee. Therefore, since whatever estates may be created by one seized in fee may be also created under a general power, the commencement of the limitation is computed from the time of the power's exercise and not its creation.

In the case of a general power of appointment by will,

however, the weight of authority counts the perpetuity period from the date of creation on the ground that since the donee cannot freely alienate the property during his life, he is not the practical owner thereof. A minority view disagrees with this position on the theory that the concept of actual ownership clouds the substance of the matter, which is that if the person having the power without the ownership may appoint to whomsoever he pleases at the time he exercises it, he is in the same position *in respect to the perpetuity* as if he were actually the owner. Thorndike, General Powers And Perpetuities, 27 Harv. L. Rev., pp. 705, 717. Also see *Northern Trust Co.* v. *Porter,* 368 Ill. 256, for leading citations on both positions.

Since this is a case of first impression, we have read with interest the authorities supporting the above positions. See Gray, General Testamentary Powers And The Rule Against Perpetuities, 26 Harv. L. Rev., p. 720; Thorndike, General Powers And Perpetuities, *supra;* Annot., 1 A.L.R. 374; and *Northern Trust Co.* v. *Porter, supra.* From this reading it appears that the early English cases in counting the perpetuity period did not distinguish between a general power to appoint by deed and will and a general power to appoint by will only and we think the cases following this position are the more persuasive.

In essence the majority jurisdictions characterize a general power of appointment by will as being in the nature of a special power, and, as such, a part of the creating instrument of the donor. They reach this result solely on the ground that because the donor has tied up ownership of the property until the donee's death, the restraint on alienation is sufficient to count the perpetuity period from the power's creation.

We think that this position misapprehends the fundamental concepts involved here. The law does not prohibit an estate being tied up for the life of any one individual,

but prohibits only restraint beyond lives in being plus twenty-one years. See Thorndike, *supra*. When the donee exercises his power, he is *at that time* the practical owner thereof, *for the purposes of the rule,* as he can appoint to anyone of his choice as well as his own estate. Furthermore when he exercises the power he can create, unlike the case of a special power, estates entirely independent from those created or controlled by the donor, and so, as to the donee, the power is a general one. See Perpetuities In Perspective: Ending The Rule's Reign Of Terror, by W. Barton Leach, 65 Harv. L. Rev. 721.

Consequently, we hold the trust created by clause fourth of Mrs. Tilley's will pursuant to her general testamentary power of appointment is valid. We arrive at this conclusion not only because logic favors its adoption but also because we believe it is in line with the trend to obviate the technical harshness of the rule against perpetuities and decide cases on the substance of things. 6 American Law of Property §24.45 (1952), p. 118; 3 Restatement, Property §343 (1940), p. 1913; *Union & New Haven Trust Co.* v. *Taylor,* 133 Conn. 221. For a learned discussion of this problem, see Perpetuities In A Nutshell, 51 Harv. L. Rev. 638, and Perpetuities: The Nutshell Revisited, 78 Harv. L. Rev. 973, both being articles by W. Barton Leach.

We come now to complainants' contention that the federal and Rhode Island estate and transfer taxes should be paid from the residue of Mary M. Tilley's estate. Specifically the narrow issue presented is does Mrs. Tilley's will clearly express an intent that her residuary estate should bear the burden of taxes assessed on the appointed property passing under clause fourth.

The law concerning apportionment of taxes between the probate estate and other assets includible in a decedent's gross estate for estate and inheritance tax purposes has been extensively reviewed by this court. See *Hooker* v. *Drayton,*

69 R. I. 290, *Union Trust Co.* v. *Watson,* 76 R. I. 223, *Industrial Trust Co.* v. *Budlong,* 77 R. I. 428, *Kershaw* v. *Kershaw,* 84 R. I. 429, and *Boyd* v. *Jordan,* 92 R. I. 232. The basic rule of construction enunciated in those cases is that in the absence of contrary testamentary direction, the burden of all debts, charges and obligations falls on the residue. However, this rule is applicable only as to the testator's true estate within the meaning of the law of property. Under that law, property passed pursuant to a general testamentary power of appointment is deemed a part of the donor's not the donee's estate, *Hooker, supra,* and *Van Alen* v. *Bliss,* 49 R. I. 379, and taxes allocable to the appointed property are borne by it unless the decedent donee clearly directs otherwise. See *Hooker, supra,* where the court said at page 296:

> "In the absence of a clearly expressed intent to the contrary in the decedent donee's will such tax is ultimately to be borne by the appointed property, and not by his residuary estate. Such a rule is more consistent with logic and the realities than is a rule which, in the absence of a testamentary expression to the contrary, would assume that the residuary estate of the donee was chargeable with such tax burden."

When we consider the tax clause of Mrs. Tilley's will wherein she directed her executors "to pay all my debts, funeral expenses, and expenses of administration, including all estate and inheritance taxes," we are unable to find the "clearly expressed intent" which in *Hooker* v. *Drayton, supra,* we said was a prerequisite to imposing upon the residuary estate liability for the portion of the death duties attributable to the inclusion of appointed property in the taxable estate. Nor can we find in that clause language which states such a purpose with that degree of "clarity" called for by *Union Trust Co.* v. *Watson, supra,* where we said at page 229 that "if it had been the testator's intention to provide for the payment out of the testamentary estate of taxes upon property held under the insurance trust agreement

* * * it would have been simple to express that purpose in appropriate language."

It would not have been difficult for the decedent to relieve her nonprobate taxable assets from their proportionate shares of the burden of the death taxes. She could have done this by providing, for example, that her residuary estate should bear the burden of any such taxes imposed with respect to any property required to be included in her taxable estate irrespective of whether or not it was disposed of or passed under her will. If she had so provided, she would have manifested a clear expression of where she wanted the burden of the taxes to fall. Merely to provide generally as she did that her executors should pay all the estate and inheritance taxes without more was not enough.

We hold, therefore, that the taxes in question should be apportioned between Mrs. Tilley's estate and the trust corpus appointed under clause fourth of her will. We note that we have treated only those questions which the parties have briefed.

On July 6, 1966, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Sheffield & Harvey, W. Ward Harvey, Richard B. Sheffield*, for complainants.

*Moore, Virgadamo, Boyle & Lynch, Jeremiah C. Lynch, Jr.*, for respondents Evelyn M. Barrett and Aline C. Lathan.

*Corcoran, Peckham & Hayes, Edward B. Corcoran*, Guardian ad litem.