*In re* ESTATE OF JOHN R. FENDER, Deceased.—(ESTATE OF JOHN R. FENDER, Petitioner-Appellee, *v.* DOLORES D. FENDER *et al.*, Respondents-Appellants.

First District (2nd Division)    Nos. 80-444, 80-1010 cons.

Opinion filed May 26, 1981.

Robert S. Kramer, of Elgin, for appellants.

Irvin J. Jacobson, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

John R. Fender died on December 18, 1977, leaving an estate of $639,029.76. The estate comprises both probate and nonprobate assets. The nonprobate assets, proceeds from insurance policies, amount to $505,061.60. The insurance policies list as beneficiaries decedent's children and his former wife, Dolores D. Fender (hereinafter collectively referred to as the Beneficiaries). The probate assets, comprising both personalty and realty, pass under the residuary clause of the will to Gail Wood, who is unrelated to decedent. Wood was also named executrix. The present dispute centers on the ultimate burden of payment of Federal estate taxes assessed against the estate. These taxes amount to $168,036.60, a sum greater than the total amount of the probate estate which has an estimated value of approximately $70,000. The Beneficiaries contend that the executrix, Wood, should exhaust the probate estate prior to charging the Beneficiaries for the balance of the tax liability. Executrix, on the other hand, asserts that the taxes should be apportioned among all of decedent's beneficiaries in accord with the tax exposure generated by the amounts received, whether by insurance proceeds or testamentary distribution. Executrix premises her arguments for apportionment on two grounds: first, that statutory and case law provide for apportionment in the absence of an express contrary intent in the will; and second, that the parties in the instant case agreed to apportion tax liability. The Beneficiaries argue that they did not enter a binding agreement to apportion taxes. Further, they maintain that there was an express provision in the will which precludes apportionment of taxes.

A secondary issue is presented by the cross-appeal of the executrix: whether attorneys' fees and expenses incurred in the administration of the estate should be apportioned between the probate and nonprobate estates. The trial court ruled that the tax liability should be apportioned between the probate and nonprobate estates, but that the expenses of administration of the estate should be borne solely by the probate estate. This appeal and cross-appeal followed.

Decedent's will, which provides that his entire probate estate pass to executrix Wood, also provides:

"Item One: I direct that all my debts, legitimate charges against my estate, funeral expenses, expenses of my last illness, and the expense of the administration of my estate, including any and all taxes and legitimate claims, be paid by my executrix, hereinafter named, out of the first monies available therefor."

This provision is the only section of the will pertaining to payment of taxes.

Prior to filing a petition with the circuit court seeking apportionment, the executrix, through her attorney, exchanged correspondence with the Beneficiaries' attorney concerning allocation of taxes due on the estate. In March 1979, the Beneficiaries paid $100,000 to the executrix with directions that the money be used to pay Federal taxes. This payment followed a series of letters which purported to memorialize an agreement between the parties to share in the tax liability.

The executrix later filed suit, alleging that the $100,000 tendered was insufficient to satisfy the tax liability generated by the nonprobate estate. At trial, Dolores Fender testified that she had acted for all of the Beneficiaries. She stated that she had never executed any agreement authorizing the apportionment of estate taxes, and although she had authorized payment by her attorney of $100,00, she had not authorized any payment exceeding $100,000. Executrix Wood testified that a balance of $38,000 remained to be paid to satisfy Federal tax liability.

The trial court found that equitable apportionment, absent a clear contrary direction in the will, was proper in Illinois. It noted, however, that it construed the direction in the residuary clause that the executrix pay all taxes to mean that Wood, as executrix and legatee, pay all taxes out of the residue. Although it determined that this provision negated equitable apportionment as a matter of course, the trial court found that the parties had entered into a voluntary agreement to apportion taxes. The court stated that it would approve the "settlement agreement" and ordered apportionment of the estate tax liability.

The court then commented that it believed that the executrix was entitled to apportionment of attorneys' fees, but that very little evidence had been presented and that it was unsatisfied with the evidence that had

been adduced. Executrix's attorney questioned the court: "You are not applying the Doctrine of Equitable Apportionment to the fee question, because there was no agreement as to fees." The court responded: "Yes. If you can't work it out, I will work it out." The court then reserved ruling on the fee question. The court's final order recites that equitable apportionment does not apply to attorneys' fees "incurred herein," but that the Beneficiaries are liable for their proportionate share of the costs of preparation of certain forms by a third party.

Federal estate tax is a tax on the whole estate (*Lawless v. Lawless* (1958), 17 Ill. App. 2d 481, 488, 150 N.E.2d 646), and in effect, is a tax on the right to transfer property at death. In *Riggs v. Del Drago* (1942), 317 U.S. 95, 87 L. Ed. 106, 63 S. Ct. 109, the United States Supreme Court held that local law, rather than Federal law, governs the ultimate incidence of the Federal estate tax. (317 U.S. 95, 102, 87 L. Ed. 106, 113, 63 S. Ct. 109.) Thus that section of the Internal Revenue Code which provides for the executor's option of apportionment of Federal estate taxes between insurance beneficiaries and the probate estate[1] was, until recently, superseded by Illinois case law applying the "burden on the residue" rule. (See *First National Bank v. Hart* (1943), 383 Ill. 489, 497, 50 N.E.2d 461; *In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 815, 275 N.E.2d 685.) In *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, and *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266, our supreme court explicitly adopted a rule of equitable apportionment between the probate and nonprobate estates, in the absence of contrary direction by the decedent. The court in *Gowling* held:

> "[W]e find no reason why *Roe* should be inapplicable to testate estates. The reasoning employed there is equally applicable here. In the absence of directions from the decedent, *an apportionment of Federal estate tax liability must be made*, regardless of whether the decedent has written a will. In accordance with *Roe*, we hold that a proportionate share of the Federal estate tax liability * * * should be borne by the nonprobate interests * * * since those interests generated a large part of the estate tax liability." (Emphasis added.) 82 Ill. 2d 15, 22.

■■ Nevertheless, the testator clearly retains the right to designate in his will what portion of the estate will assume primary liability for the payment of death taxes. (*E.g.*, *In re Estate of Fairchild* (1974), 21 Ill. App. 3d 459, 315 N.E.2d 658.) It is evident that apportionment is now the rule in Illinois, absent a clearly manifested contrary intent in the will. The

---

[1] "Unless the decedent directs otherwise in his will, if any part of the gross estate on which tax has been paid consists of proceeds of policies of insurance on the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the taxable estate." 26 U.S.C. §2206 (1976).

question, then, is whether the language in decedent's will demonstrates a clear intent that the residue bear the primary burden of payment of death taxes. We note that *Roe* extended apportionment to encompass attorney's fees and other costs of administration. But *cf. Sanders v. Boyer* (Ariz. App. 1980), 126 Ariz. 235, 241, 613 P.2d 1291, 1297 (denying cross-appeal for attorney's fees in a State where "burden on the residue" rule is still operative).

In the instant case, the trial court determined that the language in the will, "I direct that all my debts, legitimate charges against my estate * * * be paid by my executrix," expressed the testator's intent that the executrix pay estate taxes. Therefore, the question is whether the common direction that an executor pay legitimate charges against the estate should be construed as an order that the residue assume primary liability for all payments. In *Gowling*, the will at issue contained a direction that the executor have the power to "settle claims in favor of or against my estate." The trial court had reasoned that this "provision of the testator's will * * * indicated the testator's intention that probate assets be used to settle Federal estate taxes, since amounts owed the Federal government represent a class of claims that may be assessed against the estate." Our supreme court rejected this reasoning, holding without discussion of the specific clause that, "In the absence of directions from the decedent, an apportionment of Federal estate tax liability must be made." (82 Ill. 2d 15, 22.) The appellate court's decision in *Gowling*, which was affirmed by our supreme court, contained some discussion of whether the direction in the *Gowling* will contravened equitable apportionment. The appellate court noted, "The mere recital that the executor is to pay the claims of the estate seems to lack any indication of who should bear the burden of estate taxes. In other jurisdictions, the simple direction in a will that the executor is to pay all just debts or obligations is not viewed as a specific direction concerning the payment of death taxes nor does it necessarily constitute a direction against apportionment. See generally Annot., 70 A.L.R.3d 630 §6[a] (1976)." *In re Estate of Gowling* (1979), 77 Ill. App. 3d 548, 551-52, 396 N.E.2d 82, *aff'd* (1980), 82 Ill. 2d 15, 411 N.E.2d 266; see also *Johnson v. Hall* (1978), 283 Md. 644, 655, 392 A.2d 1103, 1110 (reversing intermediate appellate court, and holding that phrases in a will, "I direct that * * * all estate and inheritance taxes, be paid as soon after my death as can lawfully and conveniently be done," and that the executor "pay all expenses enumerated * * * either from the real or personal property of my estate," did not constitute a direction by the testatrix that taxes be paid from the residuary estate); *In re Crozier's Estate* (1964), 105 N.H. 440, 442, 201 A.2d 895, 896 (clause directing payment of taxes out of estate was not a clear-cut provision that residue must be exhausted first).

■■ The direction in decedent's will in the case at bar is directly analogous

to that in *Gowling* and mirrors the provisions in the above cited cases from other jurisdictions. Following the rationale of those cases, decedent's provision that the executrix pay all legitimate debts "out of the first monies available therefore" is an embodiment of the principle of probate law that legitimate debts be paid prior to distribution of the estate, rather than a clear-cut direction to exhaust the residue prior to apportionment of debts in excess of the probate estate. (See also *Whitlow v. Thomas* (Ohio App. 1949), 86 N.E.2d 622, 625 ("crystal clear" expression of testator's contrary intent is required to negate apportionment).) Accordingly, under the holdings of *Roe* and *Gowling*, the estate taxes levied on the instant estate are subject to apportionment among the beneficiaries of both the probate and nonprobate estates proportionate to the sums that generated those taxes.

■■ The trial court herein found that an oral agreement existed between the Beneficiaries and the executrix to apportion taxes. We note that the weight of authority disfavors binding a principal to an oral agreement compromising a claim or cause of action when that agreement is made by an attorney without the principal's express consent or authority. (See *County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 11, 405 N.E.2d 1376; *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 869, 356 N.E.2d 837; *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 444, 292 N.E.2d 154; *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 896, 275 N.E.2d 429; *Younkins v. Younkins* (1970), 121 Ill. App. 2d 416, 420-21, 257 N.E.2d 521; accord, *Morr v. Crouch* (1969), 19 Ohio St. 2d 24, 27, 249 N.E.2d 780, 783 ("attorney who is without specific authorization has no implied power by virtue of his general retainer to compromise and settle his client's claim"); cf. *Vece v. De Biase* (1964), 46 Ill. App. 2d 248, 252, 197 N.E.2d 79, *appeal dismissed* (1964), 31 Ill. 2d 542, 202 N.E.2d 482 (oral agreement may not be final until release is signed); but cf. *Parker v. Board of Trustees* (1966), 74 Ill. App. 2d 467, 470, 220 N.E.2d 258 (where attorney has no specific authority to enter into stipulations for his client, but does so, client's remedy does not lie in collateral attack on the judgment but in an action against the attorney).) In the instant case there was no direct proof that the Beneficiaries' attorney was authorized to settle claims. Indeed, both the attorney and Dolores Fender denied such an express grant of authority. Nonetheless, we need not decide whether or not there was an express grant of authority to the Beneficiaries' attorney sufficient to bind them as principals to the purported agreement. Recent decisions of the Illinois Supreme Court mandate equitable apportionment in the instant case, whether or not there was an agreement to settle, and thus the decision of the trial court apportioning taxes is affirmed. "It is of the judgment of the court appellant is permitted to complain, and not of the

grounds or reasons upon which the court founded its decision." *Campbell v. Powers* (1891), 139 Ill. 128, 135, 28 N.E. 1062.

■■ The final issue is that presented by appellee's cross-appeal. The executrix claims that attorneys' fees and costs of administration of Fender's estate should be subject to equitable apportionment. The trial judge's reasons for denying apportionment of fees and costs can only be gleaned from his statement that he was "unsatisfied" with the evidence relative to appropriate attorneys' fees and the statement in his order that equitable apportionment does not apply to attorneys' fees "incurred herein." Our supreme court in *Roe* held that, "The equitable considerations which * * * support the apportionment of the Federal estate tax between the probate and the nonprobate assets logically extend to and are applicable to expenses incurred in behalf of the nonprobate assets." (*Roe*, at 533.) In accord with *Roe*, apportionment of the expenses incurred on behalf of the Beneficiaries could properly be charged to the nonprobate estate. Therefore, the case is remanded for the trial court's consideration of apportionment of those expenses.

Affirmed in part; reversed and remanded in part, with directions.

HARTMAN, P. J., and DOWNING, J., concur.