DECISION
This matter is before the Court on the appeal by Mary H. Reynolds and Gregory F. Fater ("Appellants"), as Executors of the Will of Charles C. Reynolds, from an Order of the Probate Court of the Town of Jamestown, filed on January 10, 2006. The Probate Court's Order, among other things, denied Appellants' petition for tax allocation and apportionment pursuant to the Uniform Estate Tax Apportionment Act, R.I. Gen. Laws § 44-23.1-1 et seq. The Court has reviewed the evidence and the applicable law, together with the parties' legal memoranda and oral arguments, and now issues this written decision.
 Facts and Travel
This case involves the administration of the estate of Charles C. Reynolds ("Decedent") and the interpretation of certain provisions of his Last Will and Testament. On October 2, 2000, Decedent, with the assistance of his attorney, Gregory F. Fater, executed the will currently in dispute. In relevant part, the will provides: *Page 2 
 "First: I direct my Executor, hereinafter named, to pay all my just debts, funeral expenses and expenses of administration, including as an expense of administration, all estate, legacy, succession and inheritance taxes.
 . . .
 Third: In the event that my wife, MARY H. REYNOLDS, shall survive me, I provided as follows:
 (a) I give and bequeath to my said wife all household furniture and furnishings, silverware, ornaments, jewelry, automobiles, clothing and personal effects, and all other tangible personal property of every name, nature and description, which I may own at the time of my death.
 (b) I give and bequeath the sum equal to one third of the personal exemption allowed on Federal Estate Taxes (currently $675,000.00) to each of my children, Nancy E. R. Wharton, Edward P. Reynolds, and Ellen C. Reynolds. I have provided a Transfer on Death Agreement for this purpose. . . .
 (c) I give, devise and bequeath all the rest, residue and remainder of my property and estate, real, personal or mixed, wheresoever situated and howsoever and whensoever acquired, whether before of after the execution hereof to which I may be in any way entitled, or over which I may have any power of appointment or disposition to my daughter NANCY E. R. WHARTON and my attorney GREGORY F. FATER, as Co-Trustees, for the following uses and purposes: To hold, manage, invest and reinvest the same, receive and collect the income accruing therefrom and after paying thereform all expenses of administering this trust, which in the judgment of my Trustee are properly chargeable against income, to pay the balance of the income therefrom to my wife, MARY H. REYNOLDS, or for her benefit.
 . . . Upon the death of my said wife, MARY H. REYNOLDS, the Trustee shall distribute the balance of the Trust Estate, after the payment of all expenses incidental to the distribution, in equal shares, to my children, NANCY E.R. WHARTON, EDWARD P. REYNOLDS and ELLEN C. REYNOLDS."
Decedent was survived by this wife, Mary H. Reynolds, and his three children from a previous marriage: Edward Reynolds, Ellen Reynolds, and Nancy E.R. Wharton. Through his will, which was admitted to probate in Jamestown, Rhode Island, Decedent appointed Appellants as co-executors of his estate. Upon Decedent's death, non-probate *Page 3 
property in the amount of $1,629,235 passed to Edward Reynolds, Ellen Reynolds, and Nancy E.R. Wharton ("Appellees"), including $1,328,162 from the Transfer on Death Agreement referenced in the will. This property generated federal estate taxes in the amount of $482,878, as well as $120,493 in state estate taxes. A dispute arose among the parties as to who is responsible for paying the estate taxes.
Appellants subsequently petitioned the Probate Court to determine whether the estate taxes were to be apportioned. Appellants contended that Decedent's will provides no direction regarding the payment of estate taxes. Thus, according to them, the estate taxes were to be apportioned among all interested parties, including Appellees, pursuant to the Uniform Estate Tax Apportionment Act. Conversely, Appellees took the position that Decedent's will provided that the estate taxes were to be paid from his estate and, therefore, the apportionment statute did not apply.
In an Order dated January 10, 2006, the Probate Court, without making any findings of fact or law, denied Appellants' petition and held that the estate taxes were to be paid from the residue of Decedent's estate. Appellants filed a timely appeal to this Court pursuant to R.I. Gen. Laws § 33-23-1 et seq. The matter has been briefed extensively and the parties presented oral arguments during a hearing before this Court on January 19, 2007.
 Standard of Review
Under R.I. Gen. Laws § 33-23-1, the Superior Court may review a Probate Court's order. "Any person aggrieved by an order or decree of a probate court . . . may, unless provisions be made to the contrary, appeal to the superior court for the county in which the probate court is established. . . ." Id. at § 33-23-1 (a). When "hearing probate *Page 4 
appeals, `the Superior Court is not a court of review of assigned errors of the probate judge, but is rather court for retrial of the case de novo.'" In re Estate of Paroda, 845 A.2d 1012, 1017 (R.I. 2004) (citingMalinou v. McCarthy, 98 R.I. 189, 192, 200 A.2d 578, 579 (1964));see also, R.I. Gen. Laws § 33-23-1 (d). While the record of a probate court proceeding may be introduced on appeal, "the findings of fact and/or decisions of the probate court may be given as much weight and deference as the superior court deems appropriate, however, the superior court shall not be bound by any such findings or decisions."[1]
Section 33-23-1 (d).
 Law and Analysis
The thrust of Appellants' argument on appeal is that Decedent's will does not clearly preclude apportionment of estate taxes and, thus, the provisions of the Uniform Estate Tax Apportionment Act control. Accordingly, they maintain that the Probate Court's Order must be reversed. Conversely, Appellees Edward and Ellen Reynolds contend that apportionment is not mandatory under Rhode Island law. Rather, they assert that the apportionment statute is a gap-filler, used in circumstances of intestacy or when a will makes no provision for the payment of estate taxes. Since Decedent's will contains a provision — the tax clause — pertaining to the payment of estate taxes, they argue that the apportionment statue and its terms are not applicable to this case. Finally, Appellee Nancy E.R. Wharton offers a slightly different argument than that of her co-appellees. She concedes that the apportionment act is mandatory, unless the decedent's will directs otherwise. Accordingly, she avers that the tax clause in Decedent's will directing the *Page 5 
executors to pay all the decedent's just debts, "including all estate, legacy, succession and inheritance taxes" is sufficient to avoid statutory apportionment.
Under the version of the Uniform Estate Tax Apportionment Act adopted by the General Assembly in 1971, § 44-23.1-2 states:
 "Unless the will provides, the tax is apportioned among all persons interested in the estate. The apportionment is made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax are used for that purpose."
Furthermore, the act defines "Person interested in the estate" as "any person, including a personal representative, guardian, or trustee, entitled to receive, or who has received, from a decedent while alive or by reason of the death of a decedent any property or interest in property included in the decedent's taxable estate[.]" Id. at §44-23.1-1 (4). A review of relevant case law indicates that no court in this jurisdiction has been called upon to interpret this statutory scheme. Thus, many of the issues presented on this appeal are ones of first impression.
It has been noted that the principal reason and purpose of the enactment of an estate tax apportionment statute is "to avoid the result sometimes attendant upon the general rule that the burden of estate taxes . . . falls upon the residuary estate . . .[,] particularly the hardship often resulting from the applicability of that rule in regard to property not included in the probate estate of the decedent." Maurice T. Brunner, Annotation, Construction and Application of StatutesApportioning or Prorating Estate Taxes, 71 A.L.R. 3d. 247, 268-69 (1976); see also 42 Am. Jur. 2d Inheritance, Estate, and Gift Taxes
§ 311 (2000) ("The purpose of such statutes is to accomplish equitable allocation of the burden of the tax among those actually affected by that burden, and to *Page 6 
prevent consumption of the residue"); 1 Page on Wills § 4.23 (1960). In order to further this important public policy, commentators and other courts interpreting similar statutes have stated that such apportionment acts are mandatory in nature, and apply unless the testator directs otherwise in the will. See Brunner, supra, at 268; 42 Am. Jur. 2dInheritance, Estate, and Gift Taxes § 312 (2000); see also In re Estateof Kyreazis, 701 P.2d 1022, 1024 (N.M. 1984); Bushee v. Bushee, 303 N.W.2d. 320, 322 (N.D. 1981); In re Estate of Huffaker, 641 P.2d 120,121 (Utah 1982); In re Estate of Kelly, 584 P.2d 640, 641
(Colo.Ct.App. 1978); In re Estate of Fender, 422 N.E.2d 107, 110 (Ill.App.Ct. 1981); In re Estate of Roe, 426 N.W.2d 797, 800 (Mich.Ct.App. 1988).
The overwhelming majority of jurisdictions which have adopted the Uniform Estate Tax Apportionment Act have held that a directive against apportionment should be expressed in clear and unambiguous language.See In re Estate of Shoemaker, 917 P.2d 897, 899 (Kan. 1996); In reEstate of Kyreazis, 701 P.2d at 1024; Bushee, 303 N.W.2d. at 322;In re Estate of Fender, 422 N.E.2d at 110; In re Estate of Beebe, 268 A.D.2d 943, 944 (N.Y.App.Div. 2000); In re Estate of Roe,426 N.W.2d at 800 (citing In re Estate of Hilliar, 498 P.2d 1237, 1239 (Wyo. 1972)); see also In re Estate of Huffaker, 641 P.2d at 121 ("a direction to the contrary in a will or other dispositive instrument must be expressed in terms that are specific, clear, and not susceptible of reasonable contrary interpretation"). Additionally, because "there is a strong public policy in favor of statutory apportionment of estate taxes, . . . those who contend against it must bear the burden of proof." 42 Am. Jur. 2d Inheritance, Estate, and Gift Taxes § 312 (2000);see also Brunner, supra, at 310; In re Ogburn's Estate, 406 P.2d 655,657-58 (Wyo. 1965); In re Estate of Kelly, 584 P.2d at 641; In re Estateof Roe, 426 N.W.2d at 800. In most *Page 7 
cases, "no precise words are necessary to indicate the intention to deny statutory apportionment . . ., so long as that intention clearly appears from the words of the instrument." 42 Am. Jur. 2d Inheritance, Estate,and Gift Taxes § 280 (2000). Moreover, "[a] will need not specifically mention apportionment . . ., or the controlling statute; the will only has to provide a direction for a method of apportionment of tax different from the method described in the statute. . . ." Id. However, "in the absence of a clear and unambiguous direction to the contrary in a will, apportionment of estate taxes pursuant to statute will be directed." Id. at § 312. Stated differently, "ambiguities are to be resolved in favor of statutory apportionment." Id. at § 280.
When viewing the express language from § 44-23.1-2 in light of these well-established principles, it is clear that the law in Rhode Island mandates apportionment of taxes "unless the will provides" otherwise. More specifically, the Court ultimately must determine if the decedent's will contains a clear and unambiguous directive sufficient to overcome the statutory command contained in the apportionment act. This interpretation of the statute is consistent with the common law apportionment policy pertaining to non-testamentary property adopted by our Supreme Court prior to the enactment of the Uniform Estate Tax Apportionment Act. Indeed, in Indus. Nat'l Bank v. Lance, 110 R.I. 457,458, 293 A.2d 899, 900 (1972), the Court held:
 "[t]he law relative to the apportionment of the so-called death taxes levied on assets within the probate estate and other non-testamentary assets which are included in a testator's taxable estate is well settled especially since it has been repeated by this court several times.
 Running through all these cases is the basic proposition that there will be an apportionment of such taxes unless the testator gives a clear and unambiguous direction to the contrary."[2] *Page 8 
However, this rule presumes that the directive in the will also embraces the property for which non-apportionment is sought.
In the instant matter, although the tax clause neither expressly precludes apportionment nor requires that the residue be the primary source for payment of the estate taxes, Appellees maintain that the provision constitutes a clear and unambiguous direction against estate tax apportionment. However, assuming arguendo that Appellees are correct, their argument presupposes that Decedent intended the language contained in the tax clause to apply to death taxes generated from property that passed outside of his will. As previously noted, the estate taxes for which Appellees seek non-apportionment were generated from property that passed outside of Decedent's will, mainly funds from the Transfer on Death Agreement.[3] In other words, before proceeding to the issue of whether the tax clause constitutes a clear and unambiguous directive against apportionment, this Court must first determine if the tax clause embraces the property that passed to Appellees outside of Decedent's will. *Page 9 
Although no court in this jurisdiction has been called upon to interpret the Uniform Tax Apportionment Act, our Supreme Court has on numerous occasions ruled on the issue of whether the tax clause from a will clearly evidenced the decedent's intention to relieve non-probate taxable assets from their proportionate burden of death taxes.See Indus. Nat'l Bank v. Lance, 110 R.I. 457, 293 A.2d 899 (1972);Indus. Nat'l Bank v. Bennett, 110 R.I. 448, 293 A.2d 924 (1972);Indus. Nat'l Bank v. Barrett, 101 R.I. 89, 220 A.2d 517 (1966);Kershaw v. Kershaw, 84 R.I. 429, 125 A.2d 126 (1956); Union Trust Co. v.Watson, 76 R.I. 223, 68 A.2d 916 (1949).
For example, in Union Trust Co., the Supreme Court had to determine whether the tax clause[4] from decedent's will evidenced an intent to provide for the payment out of the testamentary estate for death taxes generated from non-probate property held under an insurance trust agreement. 76 R.I. at 229, 68 A.2d at 919. In holding that the terms of the decedent's will did not reveal such an intention, the Court stated:
 "if it had been the testator's intention to provide for the payment out of the testamentary estate of taxes upon property held under the insurance trust agreement . . ., it would have been simple to express that purpose in appropriate language. The law requires clarity in the statement of such a purpose.
 For example, in Chase Nat. Bank of City of New York v. Tomagno, . . . [14 N.Y.S.2d 759
(N.Y.Sup.Ct. 1939)], the court . . . [stated]: `A provision in a will that all taxes be paid out of the residuary or general estate applies only to property passing under the will unless it specifically refers to other property, and has no effect upon inter vivos dispositions, which for one reason or another are drawn into the gross estate for tax purposes.'" *Page 10 
Id. at 229-30, 919-20 (emphasis in original). Likewise, inLance, the Court held that the tax clause[5] contained in the decedent's will did not embrace non-testamentary property disposed of by an inter vivos trust, noting that:
 "[t]here is not a single word in the quoted clause indicating that the testator had any intention whatsoever of exonerating his daughter from the payment of the death duties that are allocated to the inter vivos trust. Both the will and trust documents show care and precision in their preparation. If the testator wished to burden the residue of his probate estate with the taxes due the federal and state governments, it would have been an easy matter for him or his attorney to use the clarity of expression which would have satisfied our rule."
110 R.I. at 458-59, 293 A.2d at 900.
On the contrary, in Kershaw, the Court concluded that the tax clause, which stated "I direct that all legacy, inheritance, estate and all other taxes due from my estate be paid out of the rest and residue of my estate," contained in the decedent's will did embrace certain non-testamentary property held jointly by the testator and his son.84 R.I. at 435-36, 125 A.2d at 129-30. The Court reasoned that "the payment of taxes on such jointly held property is legally due from hisestate and therefore such payment is dictated by the clear, unambiguous and comprehensive direction. . . ." Id. at 436, 130 (emphasis in original). Similarly, in Bennett, the Court held the detailed tax clause[6] in the decedent's *Page 11 
will clearly established that the residuary estate was to bear the burden of all estate taxes, including those generated from non-probate property. Indeed, the Court explained:
 "[t]he language expressly directs her executors to pay all taxes imposed upon her estate by reason of her `decease.' This is essentially the same language which we held constituted a `clear, unambiguous and comprehensive direction' by the testator in Kershaw, . . . to pay all taxes without regard to the probate nature of the property. However, Mrs. Bennett's intention is even more clearly set forth. Her will provides that her executors should pay any taxes occasioned by her death upon or in respect to any property, including jointly held property, which shall not come into possession of her executors. This language certainly embraces the property interest held by the testatrix under a general power of appointment."
110 R.I. at 452-53, 293 A.2d at 927. When these cases are read together, it is clear that a provision in a will directing the executor(s) to pay all taxes out of the residuary estate applies only to property passing under the will unless the provision clearly and unambiguously directs payment of estate taxes generated from property that passes outside the will, or directs payment without regard to whether or not that property passes under the will.
With these rules as a guide, this Court proceeds with a discussion of the relevant provisions of Decedent's will. In doing so, the Court is aware that when interpreting a will, it is the Court's duty "to ascertain from the language of the will, if possible, the intent of the testator, and to give effect thereto if it is not contrary to positive law." Fleet Nat'l Bank v. Miglietta, 602 A.2d 544, 549 (R.I. 1992). Moreover, "unless a contrary intent clearly appears, [the] language employed by a testator must be given its natural and *Page 12 
ordinary meaning; and his [or her] general intent must be gathered from the will or clause as a whole, and not from any single expression apart from the context." Id. (quoting Bliven v. Borden, 56 R.I. 283, 288, 185 A. 239, 242 (1936)).
The tax clause of Decedent's will states "I direct my Executor . . . to pay all my just debts, funeral expenses and expenses of administration, including as an expense of administration, all estate, legacy, succession and inheritance taxes." Clearly, this language does not expressly exonerate Appellees from the payment of death taxes. Additionally, unlike the tax clause at issue in Bennett, this provision does not mention specific property, such as the funds from the Transfer on Death Agreement, passing outside of Decedent's will. Nor does it contain the phrase "due from my estate," as was included in the will at issue in Kershaw, or any other equivalent language indicating that the residuary estate should bear the burden of estate taxes without regard to whether or not that property passes under the will. In other words, this Court is unable to find "clearly expressed intent" — that the Supreme Court held was a prerequisite to imposing upon the residuary estate liability for the portion of the death duties attributable to non-testamentary property — indicating that the tax clause was intended to apply to the taxes generated from property that passed outside of Decedent's will. Cf. Barrett, 101 R.I. at 101-02, 220 A.2d at 524-25
(holding that a tax clause directing the executors "to pay all my debts, funeral expenses, and expenses of administration, including all estate and inheritance taxes" did not constitute a "clearly expressed intent" to impose upon the residuary estate the estate tax burden generated from property passing outside the decedent's will). *Page 13 
Nevertheless, Appellees cite Union Trust Co. and Lance in support of their contention that the tax clause contained in Decedent's will is broad enough to embrace taxes generated from property passing outside of his will. The tax clauses at issue in those cases contained similar language directing the executor to pay all just debts, funeral expenses, and the expenses of administering "my estate," including estate taxes.See supra notes 7 8. In both cases, the Court held that the phrase "my estate" referred to the decedent's probate estate, rather than taxable estate, and, thus, did not evidence an intention to provide payment out of the residuary estate for taxes generated on property passing outside the will. See Union Trust Co., 76 R.I. at 229, 68 A.2d at 919;Lance, 110 R.I. at 459, 293 A.2d at 900. Accordingly, Appellees maintain that because the tax clause at issue in the instant matter contains no such limiting language, it embraces all property, regardless of whether or not it passes under Decedent's will. The Court finds this argument to be unpersuasive for several reasons.
First, in Union Trust Co. and Lance, the Court neither held that the phrase "my estate" was required to find that the tax clause applies to only probate property nor held that the absence of such language indicated that the tax clause must apply to all property whether or not it passed under the will. In fact, the Court's holding inBarrett, implicitly rejects Appellees' argument. In that case, the Court held that the decedent's tax clause — not containing the phrase "my estate" and worded similarly to the tax clause involved in the instant matter — did not amount to a "clearly expressed intent" to impose upon the residuary estate the estate tax burden generated from property passing outside of the decedent's will. See Barrett, 101 R.I. at 101-02,220 A.2d at 524-25. Thus, it is clear that the absence of the words "my estate" does not, by itself, indicate that the tax clause *Page 14 
embraces all property whether or not it passes through the decedent's will. It is also clear that the phrase "my estate" is not required to find that the tax clause applies only to property passing under the will. As previously discussed, the general rule is that in a will, the tax clause, unless it clearly and unambiguously directs otherwise, applies only to property passing under the will.
Additionally, based on a reading of the will within its four corners, the Court is of the opinion that Decedent did not intend for the tax clause to embrace property that passed outside of his will. The language pertaining to death taxes is grouped with language directing the executors to pay all debts and other general expenses of administration. Compellingly, the tax clause directs the executors to pay expenses of administration, "including as an expense of administration, all estate, legacy, succession and inheritance taxes." However, as previously noted, the estate taxes in dispute were generated from property that passed outside of Decedent's will and, thus, did not descend to Appellees by virtue of the provisions of the will. In other words, nothing that Appellees received as a result of Decedent's death had to be administered through his will or estate. Moreover, paragraph 3(b) states that Appellees were to receive — by way of the Transfer on Death Agreement — one-third of the exemption allowed on federal estate taxes. This provision indicates that at the time Decedent executed the will, he was under the impression that the money provided for Appellees under the Transfer on Death Agreement would not generate estate taxes. Therefore, adopting Appellees' argument would require this Court to determine — without express direction in the will — that Decedent intended the tax clause to embrace non-testamentary property which he believed would not generate estate taxes. The Court declines to do so. *Page 15 
The rules in this jurisdiction pertaining to the apportionment of estate taxes generated from non-testamentary property have been the same for over fifty years. It would not have been difficult for Decedent to relieve his non-probate taxable assets from their proportionate shares of the burden of the death taxes. He could have done this by providing, for example, that his residuary estate should bear the burden of any such taxes imposed with respect to any property required to be included in his taxable estate irrespective of whether or not it was disposed of or passed under his will. See Barrett, 101 R.I. at 102, 220 A.2d at 525. If he had so provided, Decedent would have manifested a clear expression of where he wanted the burden of the taxes to fall. To provide generally, as he did, that his executors should pay all the estate and inheritance taxes — without more — is not enough to establish that the tax clause embraced the property received by Appellees.
Accordingly, since the tax clause of Decedent's will does not evidence a "clearly expressed intent" to embrace non-testamentary property, this Court holds Decedent did not intend for it to apply to estate taxes generated from property which passed to Appellees outside of his will.[7] Thus, finding no other language in the will indicating Decedent's intention to exonerate Appellees from the payment of death taxes, the Court concludes that all estate taxes generated from property which passed to Appellees must be apportioned pursuant to the provisions of the Uniform Estate Tax Apportionment Act. *Page 16 
 Conclusion
For the foregoing reasons, the Order of the Probate Court of the Town of Jamestown filed on January 10, 2006, is reversed, and the matter is remanded for further proceedings consistent with this decision. Counsel shall confer and thereafter submit a judgment for entry by this Court.
[1] In the instance case, from an evidentiary standpoint, the parties have proceeded with the record generated from the proceeding before the Probate Court.
[2] Prior to the enactment of the Uniform Estate Tax Apportionment Act, the law in Rhode Island concerning apportionment of taxes differentiated the "probate estate," or property belonging to the decedent, title to which passes under the will, from other "non-probate assets," or property that does not pass under the will, but which is includible in a decedent's gross estate for estate and inheritance tax purposes. The basic rule pertaining to the decedent's "probate estate" was that "in the absence of contrary testamentary direction, the burden of all charges and tax obligations falls on the residue of the estate."Indus. Nat'l Bank v. Bennett, 110 R.I. 448, 450, 293 A.2d 924, 926
(1972); see also Indus. Nat'l Bank v. Barrett, 101 R.I. 89, 101,220 A.2d 517, 525 (1966). Conversely, the tax burden generated from non-probate, or non-testamentary, property was apportioned among those who received such property, unless the decedent clearly directed otherwise in his or her will. See Bennett, 110 R.I. at 451,293 A.2d at 926; Barrett, 101 R.I. at 101, 220 A.2d at 525. Thus, despite theLance Court's reference to "assets within the probate estate," it is clear from Bennett — decided three days before Lance — andBarrett, that the quoted passage pertains to the general rule governing apportionment of non-probate property.
[3] Appellees Edward and Ellen Reynolds contend that although the Transfer on Death Account is "technically" a non-probate asset, it should be considered part of Decedent's probate estate because it was referenced in his will. See Appellees Edward and Ellen Reynolds Brief inOpp. at 15. However, probate property is defined as "property belonging to the testator title to which actually passes from him to others under his will." Lance, 110 R.I. at 459 n. 2, 293 A.2d at 900 n. 2 (emphasis added). Additionally, as discussed infra, it is not necessarily the classification of the property that determines payment of taxes, but rather the decedent's presumed intention regarding payment the death taxes generated from the property in question. See e.g. Kershaw v.Kershaw, 84 R.I. 429, 436-36, 125 A.2d 126, 129-30 (1956).
[4] More precisely, the decedent's will stated:
 "I direct that my executors hereinafter named pay all my just debts, my funeral expenses and the expenses of administration of my estate including as such expenses of administration any and all taxes in the nature of estate, inheritance, legacy, transfer and succession taxes which shall be payable to the Government of the United States or to any State of the United States."
Union Trust Co. v. Watson, 76 R.I. 223, 226-27, 68 A.2d 916, 918
(1949).
[5] In that case, the decedent's will read as follows:
 "I direct that all my just debts, funeral expenses and the expenses of administering my estate shall be paid from my estate in the due course of the administration thereof. I further will and direct that all estate, inheritance, succession and/or transfer taxes which may be payable upon or with respect to any securities or property belonging to my estate, or any interest hereby created therein, shall be paid out of the residue of my estate."
Indus. Nat'l Bank v. Lance, 110 R.I. 457, 458-59, 293 A.2d 899, 900
(1972).
[6] The tax clause read as follows:
 "I direct my executors hereinafter named to pay my just debts, funeral expenses, all proper expenses incidental to the administration of my estate and all estate, inheritance, legacy, succession or transfer taxes imposed by reason of my decease upon my estate or in respect to any interest therein, or upon or in respect to any property, including jointly held property, which shall not come into possession of my executors, to the end (without limiting the generality of the foregoing) that all devisees, legatees and beneficiaries hereinafter named, or otherwise, and beneficiaries of insurance or other contracts with insurance companies may receive their respective interests without diminution by reason of any of said taxes, except as the residue of my estate may be thereby reduced."
Indus. Nat'l Bank v. Bennett, 110 R.I. 448, 452, 293 A.2d 924, 927
(1972).
[7] Additionally, given the Court's holding that the tax clause at issue does not embrace the property which passed to Appellees outside of the will, it makes no determination as to whether the language contained in the tax clause, by itself or coupled with any other provisions of the will, constitutes a clear and unambiguous directive sufficient to overcome the statutory command contained in the apportionment act. *Page 1